**TRINITY UNIVERSAL INS. CO., et al. v. KERRVILLE HOTEL CO. et al.**

No. 3304.

Court of Civil Appeals of Texas. El Paso.
Feb. 6, 1936.

Rehearing Denied March 12, 1936.

Davidson, Randall & Gray and Goggans & Keith, all of Dallas, Henry, Bickett & Bickett, W. B. Jack Ball, Bennett & Klein, L. G. Seeligson, Wm. M. Light, L. M. Patterson, and Pfeiffer & Sanders, all of San Antonio, and Coleman Gay, of Austin, for plaintiffs in error.

H. M. Parker and Boyle, Wheeler, Gresham & Terrell, all of San Antonio, for defendants in error.

WALTHALL, Justice.

The Kerrville Hotel Company, a Texas corporation, H. M. Harrison, E. G. Walsh, and Jessie G. Burney, independent executrix of the estate of R. L. Burney, deceased, brought this suit as plaintiffs in the trial court, against the Trinity Fire Insurance Company, a Texas corporation, and a large number of others, some of them corporations and others individuals, whose names we need not state, all styled defendants in the suit.

Plaintiffs' suit being based upon alleged usurious contracts and transactions, we have concluded to briefly state the issues as made or tendered in the pleadings.

Plaintiffs' petition is stated in paragraphs, and in the statement we make of the case we will observe the paragraphs and will state substantially and as briefly as we may what we deem the pertinent matter therein.

I. On June 11, 1926, the J. E. Jarratt Mortgage Company submitted a proposal in writing to Messrs. Walsh, (R. L.) Burney, and Harrison, who later became the incorporators and first board of directors of plaintiff Kerrville Hotel Company, as follows:

"In reference to your application dated June 11th for a loan of $120,000.00 and to be secured by certain property set out in the application, and which money asked for is

to be used in the construction of a modern five story hotel to contain eighty rooms and to be completed in accord with plans and specifications to be placed on file in our office prepared by P. G. Silber:

"We beg to advise that subject to approval of title and plans and specifications, contract for construction and the leases impending, the loan is acceptable to us as follows:

"The loan is to be for $120,000, 7% interest payable semi-annually, and the principal repayable as follows:

"$6500.00 on August 1st, 1928
"$6500.00 on August 1st, 1929
"$7500.00 on August 1st, 1930
"$7500.00 on August 1st, 1931
"$7500.00 on August 1st, 1932
"$7500.00 on August 1st, 1933
"$8500.00 on August 1st, 1934
"$8500.00 on August 1st, 1935
"$60000.00 on August 1st, 1936.

"The loan is to be effective as of August 1st, 1926, and beginning with April 1st, 1927, equal monthly deposits are to be made the first of each month by the Kerrville Hotel Company with the J. E. Jarratt Mortgage Company in sufficient amounts to take care of the amortization and interest each year up to, but not including, the principal amount due the tenth year. The J. E. Jarratt Mortgage Company is to allow 3% interest on such deposits and will apply the amount so deposited to maturing items under this loan.

"Since this loan is effective as of August 1st, 1926, and the full amount of the loan will not be disbursed at that time, we agree to allow 3% interest on funds remaining in the hands of the J. E. Jarratt Mortgage Company during construction of the building.

"Fire insurance in the amount of not less than $120,000 and tornado insurance in the amount of $100,000 are to be carried in companies acceptable to the J. E. Jarratt Mortgage Company in favor of the loan.
"No. 2-Kerrville Hotel Company
"June 11, 1926.

"Since it is estimated that the building will cost $200,000. the Kerrville Hotel Company agrees to place in this building all funds necessary to the completion of the building over and above the amount of the loan herein provided for before any funds will be drawn under this loan. After this is done and proper evidence furnished to such action, we agree to make advances up to eighty-five per cent of the cost of the labor and material as certified to by the supervising architect, but not to exceed eighty-five per cent of the amount of the loan until the building is finally completed. When the building is finally completed and satisfactory evidence is furnished that all bills for labor and material are paid, the additional fifteen per cent of the loan is to be disbursed.

"It is further understood and agreed that since the proposed tenants are under a $50,000 bond to fully equip and furnish the hotel with equipment and furniture not inferior to that of the Robert E. Lee Hotel in Laredo, Texas, and after such furniture and equipment is placed in the hotel it is to be pledged as security for the faithful performance of the lease contract. It is further provided herein that this lease is to be assigned as additional collateral to the loan herein provided for, and since this is the case proper papers are to be prepared conveying all of the rights under the lease to the J. E. Jarratt Mortgage Company or its assigns, as additional collateral to the loan herein provided for.

"This commitment is made on the basis of a lease contract of 25 years signed by F. E. Wallace and Floyd Singleton and with the further agreement that the J. E. Jarratt Mortgage Company reserves the right to approve said lease insofar as the validity of the lease is concerned and also subject to a check as to the moral and financial standing of the lessees as well as their ability to conduct a first class hotel.

"It is a further condition of this loan that a construction bond satisfactory to the J. E. Jarratt Mortgage Company by one of the leading surety companies will be provided guaranteeing the completion of the improvements in accord with the plans and specifications by April 1st, 1927.

"While it is agreed herein that the lease to Floyd Singleton and F. E. Wallace is to be assigned to us as additional collateral we hereby agree that no collections will be made by the holder of the notes under this lease unless the loan is in default.

"No. 3-Kerrville Hotel Company
"June 11, 1926.

"In addition to the signature of the Kerrville Hotel Company (to be incorporated with R. L. Burney, E. G. Walsh and H. N. Harrison as stockholders with a capital stock of $140,000 of which $70,000 is represented by common stock fully paid, and $70,000 preferred stock paid in in full) R.

L. Burney, E. G. Walsh and H. N. Harrison agree to sign all notes and bonds that may be required severally, individually and as co-makers along with the Kerrville Hotel Company.

"In addition to the interest provided for in the application, the borrowers agree to pay J. E. Jarratt Mortgage Company $12,000.00 for handling the loan; said $12,000 to be paid as follows:

"$3600.00 in cash at the time of closing the loan
"$3600.00 on August 2nd, 1927
"$3600.00 on August 2nd, 1928
"$1200.00 on August 2nd, 1929

"Said deferred payments to be represented by notes acceptable to the J. E. Jarratt Mortgage Company, but not to provide for interest until after maturity.

"Parties will have the privilege of paying the loan in multiples of $100 or more, on August 1st, 1931, or on any annual interest paying date thereafter by giving sixty days written notice and paying 2% penalty on amount so prepaid. Prepayments made are to be applied in reverse order on maturity bonds or notes.

"We feel that the conditions set out herein will be complied with to our satisfaction and we will ask that you please let us have the abstract in order that we may proceed with the examination of the title, and oblige—

"Very truly yours,
"[Signature] George G. Murray
"GGM-LS Vice-President.

"Agreed to this the 11th day of June, 1926.
"[Signature] R. L. Burney
"[Signature] H. M. Harrison."

It is alleged that the proposal was accepted on the day made.

II. The Kerrville Hotel was incorporated in Texas on July 3, 1926.

III. On July 31, 1926, J. E. Jarratt Mortgage Company loaned to Kerrville Hotel Company $120,000, evidenced by 226 bonds of the Kerrville Hotel Company, bond No. 1 being substantially in words and figures as follows:

"Kerrville Hotel Company
"First Mortgage Gold Bonds
"No. 1                    $1,000.00

"On August 1st, 1928, for value received, the Kerrville Hotel Company, a corporation, existing and chartered under the laws of the State of Texas, joined herein by R. L. Burney, E. G. Walsh and H. M. Harrison, individually, jointly, severally and as co-makers, hereby promise to pay to Bearer (or, if registered, as to principal, to the order of registered holder hereof), One Thousand ($1,000) Dollars, with interest thereon from date to maturity (or until redemption if prepaid) at the rate of seven (7%) per cent per annum, in United States Gold Coin of the present standard of weight and fineness or its equal, at the office of J. E. Jarratt Company in San Antonio, Bexar County, Texas, interest to maturity is payable semi-annually upon the first day of February and of August in each year, as evidenced by attached interest coupons, such coupons are payable to bearer and only upon surrender and presentation at, or after, their respective maturities.

"This bond is one of a series of 226 like bonds, numbered from 1 to 226 (both inclusive), authorized to be executed by the maker hereof as of the date hereof, aggregating the total principal sum of $120,000, and in the respective denominations of $1,000, $500.00 and $100.00 each. Said bonds, mature in aggregate principal amounts as follows:

"$6,500.00 on August 1, 1928, and like amount on August 1, 1929;
"7,500.00 on August 1, 1930, and like amount on August 1, 1931; 1932 and 1933;
"$8,500.00 on August 1, 1934, and like amount on August 1, 1935, and
"$60,000 on August 1, 1936.

"Each bond of said series is issued under and equally and ratably secured by a Deed of Trust, executed by the maker hereof, of even date, to J. E. Jarratt Company of San Antonio, Texas, as Trustee; said instrument is here referred to for a particular description of the terms and conditions thereof upon which said bonds and coupons are issued and secured and for a description of the security therefor, and also the rights of the holder or holders of each of said bonds and coupons as set out in said Deed of Trust.

"The Kerrville Hotel Company, its successors or assigns, and the said R. L. Burney, E. G. Walsh and H. M. Harrison, their heirs or assigns, reserve and always shall have the right, at their option, to redeem and prepay prior to face maturity, in whole, or in part, any of said bonds maturing on August 1, 1931, on August 1, 1931, or on any interest paying date thereafter and to

cancel and abate all interest coupons incident thereto, maturing thereafter, upon 60 days prior notice given in the manner and upon the terms and conditions set out in the Deed of Trust referred to herein. Upon the exercise of such option in each case, the price at which said bonds may be redeemed is $102.00 per $100.00 par value and accrued interest.

"Any holder hereof, upon application to the J. E. Jarratt Company, of San Antonio, Texas, may cause this bond to be registered in the owner's name, as provided in the Deed of Trust referred to herein; such registration shall be noted hereon by the Registrar; after being so registered, then the same thereafter shall be payable as to principal only to the order of the registered holder, and no transfer hereof shall be valid unless made on the books of the registrar by the registered owner in person, or by his attorney duly authorized, nor until such transfer is noted hereon. This bond, however, may be discharged from registry by being so transferred to bearer and thereby again become transferable by delivery. This bond so often as desired, may be so registered or discharged. Such registration shall in no manner affect the interest coupons and same, so long as this bond has not been redeemed and prepaid, shall be payable to the Bearer thereof.

"Should default be made in the payment at maturity of any bond, or interest coupon, of said series, or should default be made in the performance of any of the covenants made by the maker hereof, in the deed of trust above referred to, then the principal of this bond may become and be due and payable before its specified maturity, together with interest then accrued hereon and attorney's fees and interest on past due principal or interest, all as provided for in said deed of trust.

"Neither this bond, nor any interest coupon hereto attached or incident, shall ever become or be valid unless and until this bond shall have been duly authenticated by the signature of the Trustee to the Trustee's Certificate on the back hereof.

"In testimony whereof, Kerrville Hotel Company, a corporation has caused these presents to be executed, sealed and delivered by its officers hereunto authorized, and has caused the interest coupons bearing the facsimile lithographed signatures of its President and its Secretary to be attached hereto, and R. L. Burney, E. G. Walsh and H. M. Harrison, individually, jointly, severally, and as co-makers, have also signed and executed these presents and has caused the interest coupons bearing the facsimile lithographed signatures of each to be attached hereto, as of date July 31st, A. D. 1926.

> "Kerrville Hotel Company
> "By ————, President.
"Attest: ————, Secretary
> "R. L. Burney, E. G. Walsh,
> H. M. Harrison."

"That the rest of the 226 bonds of said series are in words and figures substantially the same as Bond No. 1 except as to principal amounts and maturity dates, which are as set forth in Bond No. 1 set out herein."

IV. Simultaneously with the execution of said bonds, the Kerrville Hotel Company agreed to pay J. E. Jarratt Mortgage Company $12,000 for handling the loan, said sum to be paid as follows: $3,600 paid at the time of the loan; $3,600 to be paid on August 2, 1927; $3,600 to be paid on August 2, 1928; $1,200 to be paid on August 2, 1929. Said deferred payments were represented by notes bearing interest from maturity at the rate of 10 per cent. per annum; on default in payment at maturity if placed in the hands of an attorney for collection, 10 per cent. of principal and interest was added as collection fees. The notes were signed by the Kerrville Hotel Company by its president, and by Harrison, Burney, and Walsh. The notes were further secured by a mortgage upon the property.

V. This paragraph recites that the bonds described and the three notes were secured by a deed of trust and describes the property given as security.

VI. This paragraph recites that the bonds described, the three notes, and the deed of trust were all executed together and constitute one and the same transaction.

VII. This paragraph recites that the deed of trust was duly recorded and recites some of its provisions, to the effect that the hotel company will not permit waste, will pay the taxes, will not extend or assent to the extension of the time of payment of any of the bonds or coupons secured thereby, and recites other provisions of the deed of trust not necessary to state here.

VIII. This and the next succeeding paragraph recite that the deed of trust provides for the power of sale, the application of the proceeds of sale, a substitute trustee, that J. E. Jarratt Company having resigned

as trustee, the Wheeler-Gill Company was duly appointed substitute trustee and is sued herein in such capacity.

X. This paragraph recites that by mutual mistake the deed of trust does not recite that the said three notes were secured by the deed of trust, that by agreement between the parties it was contemplated the deed of trust should contain recitals that it secured the notes, and plaintiffs ask that the deed of trust be reformed to include said notes.

XI. This paragraph recites in substance that on or about the date of the execution of bonds, notes, and deed of trust (July 31, 1926), plaintiff Kerrville Hotel Company, H. M. Harrison, E. C. Walsh, and R. L. Burney, deceased, husband of plaintiff Jessie G. Burney, delivered to said J. E. Jarratt Mortgage Company all of the bonds hereinabove described, the sum of $3,600, in cash, and the three promissory notes described; that the $12,000 evidenced by said $3,600 cash and said three notes all of which have been paid in full according to the terms thereof, constituting interest on said loan in excess of and in addition to the interest provided for in the face of said bond; that said transaction consisting of the execution and delivery of said deed of trust, and said bonds, the payment of said $3,600 in cash and the execution and delivery of said three promissory notes was usurious, illegal and void as to all interest in the following particulars:

First. That under the terms of the contract evidenced by the letter of June 11, 1926, it was provided that the loan of $120,000 was to be effective as of August 1, 1926, it was provided in said contract that no part of said $120,000 should be paid to the borrower until the borrower had expended the sum of $80,000 in the construction of the hotel building, and the loan was to be paid only as the construction of the hotel advanced, and only to the extent of 85 per cent. of the cost and labor and material until the building was completed, when the remaining 15 per cent. of the loan was to be paid; that the contract provided the borrower would be allowed 3 per cent. on the fund retained until paid; that although the $120,000 bore interest at the rate of 7 per cent. and additional interest as evidenced by the said $12,000, none of the $120,000 was paid to the borrower until on or about the 3d day of November, 1926, when $10,045 was paid, and thereafter payments were made as follows:

$14,774, November 18, 1926.
$9,290, December 3, 1926.
$16,367, December 23, 1926.
$18,951, January 26, 1927.
$14,373, March 8, 1927.
$28,300, March 28, 1927.

(The above are the sums alleged in the petition to have been paid to the borrower of the $120,000.) "It is alleged: The balance of said loan being retained by the J. E. Jarratt Mortgage Company as interest."

Second. The provisions in article 17 of the deed of trust and designated "defaults," plaintiffs' failure to perform such acts within one year from date.

XII. In this and some subsequent paragraphs the petition refers to provisions in the deed of trust and other matters which we omit to state but will consider in connection with the propositions referring thereto.

XIX. In this paragraph plaintiffs say that the transactions between the parties as above stated are usurious; that plaintiffs have paid usurious interest amounting to $48.50 on each $100 par value of all of said bonds, said payments consisting of the payment of the $3,600 in cash, the payment in full of the other three notes above totaling $8,400, and the payments of the 7 per cent. interest on said bonds, payable semiannually, up to and including the installment of interest made payable on the 1st day of February, 1932.

XX. In this paragraph the petition states the amount of said bonds held by each individual defendant, and the offset claimed by plaintiffs by reason of the usurious interest, which amount we omit stating here.

XXI. In this paragraph the petition alleges that plaintiffs have paid to defendant the Universal Automobile Insurance Company and its successor, defendant Trinity Universal Insurance Company, the defendant the Universal Casualty Insurance Company, Trinity Universal Insurance Company, and to Trinity Fire Insurance Company and its successor, Trinity Universal Insurance Company, on bonds now held and bonds heretofore held but paid a total interest of $27,745, and that plaintiffs are entitled to a credit of said amount against the $45,000 bonds now held by Trinity Universal Insurance Company, leaving a net owing thereon of $17,255.

XXII. In this paragraph it is alleged that under the terms of a certain sinking fund agreement there has been paid to defendant the Wheeler-Gill Company, as trustee, and

is now held by defendant, the sum of $13,-034.26, said sum having been deposited with said trustee for the purpose of paying off maturities on said bonds as they might fall due; that the offsets and credits against all of said bonds, together with said sum of money now in the hands of said defendant the Wheeler-Gill Company, trustee, are sufficient to fully pay off all of the bonds maturing on August 1, 1932, on August 1, 1933, and on August 1, 1934, being all bonds maturing up to and including the 1st day of August, 1934.

XXIII. That on account of the offsets and credits set out, no money will be due under said sinking fund agreement until in 1935.

XXIV. In this paragraph it is alleged that the said bonds are negotiable instruments, and while void as to interest payments, in the hands of innocent purchasers before maturity for value, the payments of usurious interest actually made and for which offsets are claimed can only be charged against the defendants hereinabove named to whom payments were actually made.

XXV. In this paragraph the petition states the bonds by number and amount and the individual owner, now in the possession of defendant the Wheeler-Gill Company, Trustee.

XXVI. In this paragraph are stated in whose possession certain of the bonds are; the name of the defendant is stated; the number of the bond and the amount of money represented.

Plaintiffs pray for temporary injunction against defendants named restraining them from in any way transferring, negotiating, pledging, or disposing of any of the bonds except as stated, and for judgment canceling and holding for naught a part of each of the principal amount as stated, judgment canceling the interest coupons and their return into court for cancellation, and for costs.

The successor trustee under said deed of trust and all of the owners and holders of the bearer bonds at the time of suit, being defendants herein, defended on the grounds:

"(1) That no provision, or provisions, in the Deed of Trust, Bearer Bonds, Contract of June 11, 1926, or the Promissory Notes passing between the Kerrville Hotel Company and J. E. Jarratt Mortgage Company provide for payment of interest in excess of that permitted by law, and said instruments when construed separately, or if construed together as one transaction, do not constitute such a contract, or contracts, as is condemned by the law as being usurious.

"(2) That J. E. Jarratt Mortgage Company and J. E. Jarratt Company, and each of them, are well known and reputable Bond Houses and acted as the Agent for the Plaintiffs in this transaction and constituted a medium through which these bonds were sold and distributed to the general public, and that the money paid said House was for services rendered and to be rendered in connection with the loan and not as interest; that the real, and contemplated lender were the purchasers of said bonds.

"(3) The J. E. Jarratt Mortgage Company and J. E. Jarratt Company, and each of them, were well known and reputable bond selling concerns at the time these transactions took place and were not engaged in the business of making loans on its own account but engaged in temporarily financing projects pending the distribution of bonds to the general public, which fact was well known to plaintiffs, and that, as such, the J. E. Jarratt Mortgage Company and J. E. Jarratt Company, and each of them, acted as the agent or paid emissary of the Plaintiffs and said Plaintiffs are estopped to allege that the sum of money paid and agreed to be paid to the J. E. Jarratt Mortgage Company under the terms of said Promissory Note, was interest as such, but was in the nature of a fee or commission for services rendered and to be rendered by such Agent or Agents.

"(4) That the cash payment and promissory notes aggregating $12,000.00 executed by the Kerrville Hotel Company in favor of J. E. Jarratt Mortgage Company and payable over a period of three years in annual installments were not a part of the transaction whereby the Deed of trust and Bearer Bonds were issued and executed, but a separate and distinct transaction of a private nature between the Kerrville Hotel Company and its Agent or Agents, and was at all events not interest but payment for services rendered not necessarily incident to a loan even if the matter be regarded as a loan.

"(5) That the bonds and interest coupons and their original execution, negotiation and sale was a sale by a private corporation of its negotiable bonds and not a 'Loan of Money'; that said bonds were sold for their full market value at par and accrued

interest and the funds therefor were received by the Kerrville Hotel Company and is a transaction such as is permitted by law.

"(6) That the defendant bondholders in this case are all innocent purchasers for value and without notice of any defect, or defects, in connection with this transaction; that each of the defendant bondholders herein paid par and accrued interest upon the purchase of their bonds; that the contract dated June 11, 1926, calling for the payment of $12,000.00 in installments was between H. M. Harrison and R. L. Burney and the J. E. Jarratt Mortgage Company, whereas the contract under which these defendant bondholders bought their bonds is the deed of trust and a separate contract in that the same is directly between these bondholders as beneficiaries thereunder and the plaintiffs in this case, and therefore said contract of June 11, 1926, is a separate contract and part of a separate transaction since dated prior to the date of said Deed of Trust, is between different parties and complied with subsequent to the execution of said Deed of Trust; that if said contract of date June 11, 1926, be considered as a part of the contract between the Kerrville Hotel Company and these defendants and be considered as calling for the payment of interest in excess of that allowed by law instead of for services rendered and to be rendered, then the defendant bondholders, and each of them, allege that the same was a side and secret agreement entered into for the purpose of concealing from the defendant bondholders the fact that the $120,000.00 bond issue was to draw interest in excess of 7 per cent per annum constituting actionable fraud and misconduct on the part of said plaintiffs, and said plaintiffs are estopped to allege or assert the same on account of the warranties, representations and covenants made by the Kerrville Hotel Company, et al. to these defendant bondholders in the Deed of Trust dated July 21, 1926, which said representations, warranties and covenants were relied upon by these defendant bondholders, and each of them, and induced them to purchase said bonds, which said representations, warranties and covenants are as follows:

"(a) That the stockholders and directors of the Kerrville Hotel Company had passed a resolution reading as follows: 'Now, therefore, be it resolved by the stockholders of the Kerrville Hotel Company, in meeting duly assembled, that the Directors of said Corporation be, and they are hereby instructed to authorize and direct the proper officers of said Corporation, and the proper officers of said Corporation are hereby authorized and instructed to execute, issue and negotiate in the name of, and as the act and deed, of the Kerrville Hotel Company, First Mortgage Coupon Gold Bonds and interest coupons of said Corporation, in the aggregate sum of One Hundred Twenty Thousand ($120,000.00) Dollars. Said bonds to be dated and issued as of July 31, 1926, and to bear interest at the rate of seven (7%) per cent per annum, payable semi-annually, to be evidenced by attached interest coupons;'

"(b) That 'Said bonds and interest coupons have been duly prepared and executed, and are now ready for negotiation and all things necessary to make said bonds and coupons when said bonds have been certified by the Trustee for identification as hereinafter provided, the valid holding and legal obligation of the Kerrville Hotel Company, its successors and assigns, have been done and performed.'

"(c) That 'All things necessary to make these presents a valid mortgage and Deed of Trust to secure equally and ratably the payment of said bonds as herein provided, have been done and performed and the creation of this mortgage and Deed of Trust has been in all respects duly authorized.'

"(d) That 'The bonds and interest coupons intended hereby to be secured, and about to be issued and negotiated, are described briefly as follows, to-wit:

"'1. Each bond is dated July 31, 1926.

"'2. There are Two Hundred Twenty Six (226) bonds numbered consecutively from One (1) to Two Hundred Twenty Six (226) both inclusive.

"'3. Each bond and interest coupon is payable in Gold Coin of the United States of America, of the present standard of weight and fineness, or its equal, in San Antonio, Texas, at the office of J. E. Jarratt Company.

"'4. To each bond are attached interest coupons representing interest to accrue to original maturity at the rate of seven (7%) per cent per annum, payable semi-annually, on the 1st day of February and August, respectively, in each year.'

"(e) That 'the rights of each and every holder of each and all of said bonds and interest coupons, regardless of actual date of original issuance and negotiation of any particular bond, shall be, and is controlled in every way by this instrument;'

"(f) That 'all of said bonds and interest coupons shall be, and are executed, issued, delivered and/or negotiated solely and only upon, and subject to, all the terms, conditions and provisions hereof.'

"(g) That 'the lien and security of all of the said bonds and interest coupons shall take effect from the date of the execution and delivery of this instrument whether or not any or all of said bonds shall be actually issued, sold or disposed of at said date, or whether or not said bonds shall be issued, negotiated solely and only upon, and subject to, all the terms, conditions and provisions hereof.'

"(h) That 'the lien and security of all of the said bonds and interest coupons shall take effect from the date of the execution and delivery of this instrument whether or not any or all of said bonds shall be actually issued, sold or disposed of at said date, or whether or not said bonds shall be issued, negotiated or sold, in lots or parcels and from time to time, at some future date or dates, and that the lien and security of this instrument, and all bonds and interest coupons that may be issued under the same, shall take effect from the date of the execution and delivery of this instrument as though all of said bonds and coupons had been issued, sold, delivered and negotiated to and in the hands of innocent holders for value upon the date hereof.'

"(i) That 'the execution, issuance and negotiation thereof have been duly and fully authorized in accordance with the laws of the State of Texas.'

"(j) That it would not 'neglect to do or suffer to be done anything whereby the rights of the Trustee or of the holders of the bonds and coupons issued hereunder shall be prejudiced, diminished or annulled in any manner.'

"(k) That 'it is expressly agreed and understood that each and all of the bonds and coupons to be issued and delivered hereunder and secured hereby are intended to circulate as negotiable instruments; each successive holder or owner thereof, or any part thereof, by accepting the same, shall be deemed to have agreed that such bonds and coupons shall be so construed; that each and every holder or owner of said bonds and coupons, or any part thereof, shall have all the rights, risks and remedies in respect thereto as holder of negotiable instruments.'

"(l). That 'no owner or holder of any of said bonds and/or coupons shall ever be affected by any equities between the Company and the Trustee or as between the Company and any other person.'

"(m) That it will not do, omit to do, nor permit to be done, any act or thing, except such as may be expressly authorized in some other part of this instrument, which will in any manner diminish, affect or limit the security and lien hereby created.

"(n) That 'all recitals and statements herein contained in any bond and/or coupons secured hereby shall be considered solely and only as statements made by Kerrville Hotel Company, in its corporate capacity.'

"(7) That the J. E. Jarratt Company issued a prospectus, circulars and various literature which it distributed to and among defendant bondholders whereby the attractiveness of these bonds were portrayed by pictures and in writing and whereby said bonds issue of $120,000.00 was represented as being the legal, valid and subsisting obligation of the Kerrville Hotel Company, et al., with interest at the rate of 7 per cent per annum only, and as being a first, paramount and superior lien against the same; that the Kerrville Hotel Company, et al., furnished certain data and information to the J. E. Jarratt Company for the purpose of preparing such prospectus, circulars and literature and actively cooperated in the preparation and circulation thereof and actually assisted and cooperated in the circulation of the representations and warranties therein contained and are therefore estopped to assert as against purchasers of said bonds, same being the defendants herein, the truthfulness of the following facts:

"(a) That the indebtedness of the Kerrville Hotel Company did not exceed the sum of $120,000.00 and that such indebtedness was represented by Bearer Bonds only which drew interest at the rate of 7 per cent per annum only;

"(b) That 'all legal matters in connection with this issue are under the supervision of Mr. W. A. Hadden of San Antonio, for the Bankers, and Messrs. Boyle, Ezell and Grover of San Antonio, for the Company,' and that by reason thereof said bond issue was prepared and executed and the bonds issued and negotiated thereunder in accordance with the law.

"(8) That the agreement dated June 11, 1926, was in truth and in fact a contract between plaintiffs and J. E. Jarratt Company at the time when it was contemplated that the said J. E. Jarratt Company would

be the Trustee for these defendant bondholders, as beneficiaries, and that by rea-. son thereof the Kerrville Hotel Company, et al., is estopped to allege and assert an unlawful contract with the Trustee for these defendants since the Kerrville Hotel Company, et al., knew that such Trustee, selected and appointed by it, occupied a fiduciary relationship with these defendants and that the same violated the conditions of the Trust.

"(9) That the contract of date June 11, 1926, as well as all obligations thereunder constituted a contract between the J. E. Jarratt Mortgage Company and H. M. Harrison and R. L. Burney and said contract together with all of its obligations was thereafter assumed by the Kerrville Hotel Company after its organization at a later date, and by reason thereof the Kerrville Hotel Company, et al., cannot allege or assert usury in a contract, the obligations of which it had assumed."

At the conclusion of the evidence all plaintiffs and defendants filed motions for an instructed verdict which the court overruled, and submitted two issues to the jury, in substance, first, whether or not any part of the $120,000 paid J. E. Jarratt Mortgage Company by the Kerrville Hotel Company et al. was interest; and, if so, second, what part thereof. The jury found that a part of the $120,000, and such part was $9,600. Thereupon all defendants filed motions for judgment, and in the alternative, motions for judgment non obstante veredicto, which motions were overruled, and judgment entered canceling all interest on all of the bonds and canceling the principal thereof to an amount in the sum of $465 per each $1,000 bond held, except that as to the Trinity Universal Insurance Company, the bonds held by it and aggregating $45,000 were credited with $27,935, leaving a balance due of $17,065.

Defendants' joint motion for a new trial was overruled, and defendants prosecute appeal by writ of error.

## Opinion.

We have sufficiently stated the several contract provisions between the parties in the matter of the loan of the $120,000, and need not restate them here.

Plaintiffs in error submit some twenty-two propositions. It would extend the opinion to too great length to consider and discuss severally each proposition.

The bonds themselves on their face provide for the payment of 7 per cent. interest per annum, the interest to be paid semiannually. The contract of June 11, 1926, provides: "In addition to the interest provided for in the application the borrowers agree to pay to J. E. Jarratt Mortgage Company $12,000.00 for handling the loan," then states the manner in which said amount should be paid, $3,600 cash and the balance in deferred payments, the last payment to be made August 2, 1929. The evidence shows without controversy that the $12,000 was a fee or commission in connection with the loan. We understand the courts to hold that interest allowed by stat-. ute is intended to compensate for services, and while the $12,000 was paid for handling the loan, it is considered as interest paid for the loan. Here the lender exacted the payment and in the deed of trust secured its payment. Southwestern Investment Co. v. Green, 19 S.W.(2d) 102 (the opinion by Judge Pelphrey of this court); Independent Lumber Co. v. Gulf State Bank (Tex. Civ.App.) 299 S.W. 939, 940, writ refused; Forreston State Bank v. Brooks (Tex.Civ. App.) 51 S.W.(2d) 645, 646, where $16.06 more than the 10 per cent. per annum interest on the amount borrowed was charged as expense for preparing the notes and entering same on the bank books, the court said that "to allow extra charges for such services would destroy the purpose of the usury laws," and referred to Independent Lumber Co. v. Gulf State Bank (Tex.Civ. App.) 299 S.W. 939; C. C. Slaughter Co. v. Eller (Tex.Civ.App.) 196 S.W. 704.

The record shows that the first payment (except $70.) made by the lender to the borrower was on November 3, 1926. The accrued interest on the loan for that time, from August 1, to November 3, 1926, amounted to $2,100. The lender allowed the borrower 3 per cent. for that period, which amounted to $900, leaving a net profit to the lender of $1,200 over and above the interest provided for in the interest coupons, and the $12,000 charged by the lender as additional interest for making the loan.

Provision is made that should default be made in the payment at maturity of any bond as interest coupon of said series, or should default be made in the performance of any of the covenants made by the maker thereof in the deed of trust, then the principal of the bond may become due and payable before its specified maturity date. The provision occurs in each bond and in the

copy of the bond in the deed of trust. Now, the $3,600 in cash as additional interest was paid on November 3, 1926; the interest which would mature on the interest coupons on February 1, 1927, amounted to $4,200. Should the borrower make default in the payment of the first installment of interest due February 1, 1927, the lender had it in his power to receive for said six months' interest on the loan the sum of $7,800, an interest rate in excess of 10 per cent. per annum for the reduced term of the loan. Had the loan been accelerated, there would have been outstanding and collectible the three commission notes aggregating $8,400, so that for said six months' period the interest which had been paid in cash, plus the additional interest represented by the commission notes, aggregate interest far in excess of 10 per cent. per annum. Ward v. Pace (Tex.Civ.App.) 73 S. W.(2d) 959, writ refused, opinion by Judge Higgins of this court. We find here a somewhat similar situation. There it was shown that in the event Pace and wife failed to pay at its maturity the interest coupon, Mrs. Ward, at her option, might have declared the principal sum due and payable, and from said date the makers of the note were obligated to pay interest at the rate of 10 per cent. per annum. There also would have remained the second lien notes. It was held that this situation would have resulted in a contract to pay more interest than 10 per cent. per annum for the loan. The opinion in the Ward-Pace case referred to Shropshire v. Commerce Farm Credit Co. et al., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 84 A.L.R. 1269, in which it was held that contracts providing for excessive interest in case of default and acceleration of maturity were usurious; and further said that under the court's interpretation of the Shropshire contract, as imposing on the debtor a liability enforceable at the creditor's option, for compensation in excess of the permissible maximum for the detention of the borrowed money, such contract was usurious.

Plaintiffs in error in their brief quote from various cases announcing the familiar rule of construction of conflicting provisions in contracts, but as we construe the contracts here we find no conflict, since all of the documents were executed as of July 31, 1926, and executed in accordance with and pursuant to the contract between the parties of June 11, 1926; we construe them together as one continuous contract; they were made in the name of and for and in behalf of the hotel corporation to be thereafter incorporated.

We do not construe the contract of June 11, 1926, as an underwriting contract, as submitted by plaintiffs in error, but the contract, as we construe it, is an express contract for a loan by J. G. Jarratt Mortgage Company to the Kerrville Hotel Company of $120,000. Plaintiffs in error submit that there was an affirmative representation in the bonds and/or deed of trust that they constituted the sole and only contract between the parties with reference to the indebtedness to be evidenced and secured, and that said bonds and coupons were valid and binding obligations according to their terms, and based on that statement contend that defendants in error are estopped from asserting here that interest in addition was by contract charged and paid in a sufficient amount to constitute usury. The Wheeler-Gill Company, trustee, filed a lengthy plea of estoppel.

Plaintiffs in error quote at length from said instruments and resolutions of the board of directors of the hotel company, but we have not found in any part of the record any statement to the effect contended for or upon which to base estoppel.

The statutes having provided against usury, the defense of bona fide purchase of a usurious contract before maturity is not allowed. A void contract gathers no validity by circulation. Gilder v. Hearne, 79 Tex. 120, 14 S.W. 1031; Dallas Trust & Savings Bank v. Brashear (Tex.Com. App.) 65 S.W.(2d) 288. Now the rule is different where the borrower makes representations subsequent to the execution of the contract as an inducement for a purchaser to buy. Austin Real-Estate & Abstract Co. v. Bahn (Tex.Civ.App.) 27 S.W. 1047; Cain v. Bonner (Tex.Civ.App.) 149 S.W. 702.

While we have not commented on all of the propositions submitted by plaintiffs in error in their brief, we have very carefully considered each of them, and, finding no reversible error, the propositions are overruled and the case is affirmed.

Affirmed.