SHROPSHIRE et ux. v. COMMERCE FARM
CREDIT CO. et al.

Motion No. 9180; 4324.

Supreme Court of Texas.

May 16, 1931.

For former opinion, see 30 S.W.(2d) 282.

Oxford & Oxford and M. J. Baird, all of
Plainview, and Oxford & Johnson, of Stephen-
ville, for plaintiffs in error.

Williams & Martin, of Plainview, Terrell,
Davis, McMillan & Hall, of San Antonio,
Black & Graves and Chas. L. Black, all of
Austin, and F. A. Williams, of Galveston, for
defendants in error.

Turney, Burges, Culwell & Pollard, of El
Paso, Phillips, Townsend & Phillips and Nel-
son Phillips, all of Dallas, Andrews, Street-
man, Logue & Mobley, of Houston, R. G.
Smith, of Dallas, Templeton, Brooks, Napier
& Brown, of San Antonio, Samuels, Foster,
Brown & McGee, of Fort Worth, W. A. Tar-
ver, of Austin, Byron K. Elliott, of St. Louis,
Mo., Frank Wozencraft, of Dallas, Maco Stew-
art, of Galveston, Cockrell, McBride, O'Don-
nell & Hamilton, of Dallas, and E. H. Yeiser,
of Austin, amici curiæ.

GREENWOOD, J.

Near the end of the last term it was ad-
judged by the Supreme Court that a contract
was usurious under the Constitution and stat-
utes of Texas which provided for compensa-
tion in excess of 10 per cent. per annum, col-
lectible at the creditor's option, for the de-
tention of money. Shropshire v. Commerce
Farm Credit Co. (Tex. Sup.) 30 S.W.(2d) 282;
Deming Investment Co. v. Giddens (Tex Sup.)
30 S.W.(2d) 287.

The correctness of the court's judgment
has been vigorously assailed in motions for
rehearing supported by elaborate arguments
by numerous amici curiæ as well as by coun-
sel for the losing parties. Most careful re-
consideration convinces the court that the
motions for rehearing should in all respects
be overruled.

The two cases cannot be distinguished in
so far as material facts are concerned, and
we shall therefore write again only in the
Shropshire Case.

The principal grounds on which a rehear-
ing is sought are:

First. The language of the writings evi-
dencing the contract between the parties be-
ing fairly susceptible of a construction un-
der which the contract can be upheld as val-
id, it is the duty of the court to give that
construction to the contract, and a failure
to do so departs from the sound rule of con-
struction which was followed in Dugan v.
Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A.
93, 23 Am. St. Rep. 332.

Second. Even though the language of the

writings forbade any other interpretation than that same undertook to give the creditor the option to compel the debtor to pay the principal of the loan together with an amount in excess of 10 per cent. per annum for the term the debtor was entitled to the money, still the loan was not usurious; because the debtor had it within his power to avoid payment of more than the principal and legal interest by promptly meeting every promised payment.

Third. Though the contract be adjudged usurious, the creditor had not received or collected, and the debtor had not paid, any usurious interest nor a greater rate of interest than 10 per cent. per annum, and hence the creditor never became liable for a penalty of double the amount of such interest.

We will briefly state the reasons which compel us to refuse to sustain each of these grounds in the motion for rehearing, not deeming it necessary to greatly extend the opinion heretofore filed.

■ The court recognizes its duty in determining the validity of the contract here involved to apply the universally accepted rule declared in Galveston & H. Investment Co. v. Grymes, 94 Tex. 613, 614, 63 S. W. 860, 861, 64 S. W. 778, in the following words:

"To determine the question of usury in a contract, it must be tried by the statutory limitation of 10 per cent. per annum for the use, forbearance, or detention of the money for one year. If the interest contracted for exceeds that rate, it constitutes usury, no matter in what form the contract may be expressed. The court must give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal, but has no right to depart from the terms in which it is expressed to make legal what the parties have made unlawful. * * *

"If the transaction was such as to render the intention of the parties doubtful, the court would adopt that construction which would attribute to them a legal intention; but we cannot adopt any method for the solution of this question by which we must arrive at a different result from that shown by the contract, because it is impossible to conceive of the parties having an intention to use certain forms of contract that would produce a result different from that which they embodied in the contract actually made."

■■ If the contract between these parties contained no language other than that, if default was made in the payment of any installment of interest, the principal of the note, "with interest," should be collectible at the creditor's option, then such language would be fairly susceptible of the meaning that unearned interest was to be abated. So in Dugan v. Lewis, 79 Tex. 249–254, 14 S. W. 1024,

12 L. R. A. 93, 23 Am. St. Rep. 332, the language of the deed of trust, coupled with the explicit words of the note, made the contract susceptible of the interpretation that unearned interest was not collectible. But here the parties have used clear and positive language to negative the abatement of any portion of the unearned interest secured by the second lien deed of trust. The second lien deed of trust secured five interest notes for $252 each dated August 1, 1921, when the loan was made, maturing respectively August 1, 1922, August 1, 1923, August 1, 1924, August 1, 1925, and August 1, 1926. The language of this deed of trust, which we are asked to adjudge fairly susceptible of authorizing abatement of some of the second lien notes representing unearned interest, stipulates: "If the notes secured hereby and each of them are not paid promptly when due * * * then all of said notes hereby secured shall become due and payable at the election of the holder; and the trustee, his successor or substitute, may sell said premises after notice as prescribed in first deed of trust, execute and deliver a good and sufficient deed therefor, and receive the proceeds of sale, which shall be applied as follows: First: To the expense of making such sale, including compensation to the trustee; Second: To the payment of the amount secured hereby; Third: To the payment of any delinquent interest, taxes, attorney's fees or other sum due under the terms of said first deed of trust, and the balance, if any, shall be paid to the grantors, his or their heirs or assigns."

The English language could declare no plainer that what the holder of the notes was to receive, at his option, if any installment interest note secured by the second lien deed of trust was not paid at maturity, was at least: First, all of the unpaid notes secured by the second lien deed of trust and not merely a portion thereof less than all; and, second, the unpaid portion of the coupons for at least the earned interest at 6 per cent. per annum secured by the first lien deed of trust; and, third, the unpaid portion of the principal of $4,200.

Shropshire and wife paid the first and second lien notes maturing August 1, 1922, and August 1, 1923. Giving effect to the plain and unambiguous language of the second lien deed of trust, on their default to pay the second lien interest installment due August 1, 1924, they were no longer entitled to withhold the loan, if the Credit Company demanded payment, but were immediately obligated to pay for the loan of $4,200 from August 1, 1921, to August 1, 1924, not only the principal sum of $4,200, with interest at 12 per cent. per annum from August 1, 1921, to August 1, 1923, which the contract undertook to authorize the company to retain, but also an additional amount of $1,008, being the ag-

gregate of the three unpaid second lien notes for $252 each, plus at least the third first lien note of $252, such amount equalling 24 per cent. interest for the third year of the loan. Simply stated, the contract we have declared usurious is one which certainly undertakes to grant the creditor an option, contingent alone on the debtor's default, to collect interest at the rate of 12 per cent. per annum for the first and second years of a loan, and at the rate of 24 per cent. per annum for the third year, which was the final year, at the creditor's election.

The rule that the court will adopt the interpretation given by the parties to terms of a contract of doubtful meaning cannot be applied in this case; for, as stated by Mr. Williston: "If the meaning of the contract is plain, the acts of the parties cannot prove a construction contrary to the plain meaning." 2 Williston on Contracts, § 623, p. 1207.

Our conclusion is that the words of this contract are so clear that the parties must have understood them as meaning that, upon the debtor's default to pay a second lien installment note, the debtor was to become liable, at the creditor's option, for the payment of the principal of this loan, with compensation for detention thereof at a rate far in excess of 10 per cent. per annum. Abatement of unearned interest embodied in the second lien notes is not only not sanctioned, but is forbidden by the terms of the contract.

Speaking of Dugan v. Lewis, supra, the argument of Judge Nelson Phillips in behalf of the motion for rehearing states: "In a word, the view of the Court necessarily was that such a stipulation did not plainly evidence a purpose to exact, on the acceleration of the maturity, the whole amount of the interest regardless of whether it had been earned or not; and hence, a construction of that harshness—not being the inevitable construction of the actual stipulation—was not to be indulged. Had the stipulation made it clear that upon an acceleration of the maturity, the whole interest was to be collectible without reference to whether it had been earned, a different question would have been before the court." In our opinion, this latter question is the one we have determined in this case; for we have a clear stipulation that, upon acceleration of the maturity, all of the interest secured by the second lien deed of trust, despite the fact that much of it is unearned, shall be due and payable. The stipulation plainly attempts to give the creditor a present right of action for all this interest, enforceable by trustee's sale or under judicial foreclosure. Swanson v. Spencer, 177 Mo. App. 124, 163 S. W. 285, 286.

■ The Constitution expressly authorized the enactment of our statutes defining interest and providing penalties for usury. Section 11, art. 16, Constitution of 1876 and amendment adopted August 11, 1891. The precise question on which the Court of Civil Appeals and the Supreme Court differed in Parks v. Lubbock was whether a stipulation in a written contract requiring payment of an amount in excess of what would be provided by the highest conventional rate of interest, for the continued detention of money after maturity, was, under our statutes, a stipulation for a penalty or was a provision for unlawful interest. The Court of Civil Appeals adopted the view, still strenuously urged on this rehearing, that the stipulation must be regarded as merely imposing a penalty to enforce prompt payment, because the debtor's obligation to pay any unlawful amount was contingent on his own default. 50 S. W. 466, 467. The Supreme Court adopted, and has since consistently adhered to, the contrary view, regarding the language of the statute as necessitating the conclusion that whatever the debtor was obligated to pay, after maturity of his obligation, in addition to principal, for nothing save borrowed money, and on no other contingency than his default in discharging his debt when due, was to be paid for the detention of the debt, and was usury, if in excess of the amount to be yielded by the highest conventional rate. Parks v. Lubbock, 92 Tex. 637, 638, 51 S. W. 322, 323; Galveston & H. Investment Co. v. Grymes, 94 Tex. 613-615, 63 S. W. 860, 64 S. W. 778; Shear Co. v. Hall (Tex. Com. App.) 235 S. W. 195-198. It follows that under our interpretation of the Shropshire contract as imposing on the debtors a liability, enforceable at the creditor's option, for compensation in excess of the permissible maximum for the detention of the borrowed money, such contract was usurious.

■ The contract derives no validity from the fact that payment of the promised compensation, which exceeded the highest allowable conventional interest, was contingent on the creditor's election to demand such excessive compensation. The fact that the contract stipulates for more interest than the law allows on a contingency involving no risk of principal and lawful interest condemns the contract. Once you treat the acceleration clause as obligating the debtors to pay more than permissible conventional interest, instead of stipulating for a penalty, the invalidity of the contract is inevitable. This results from the rule declared by the New York Court of Appeals in words as follows: "If the contract provide for the payment of the loan with interest, at all events, it is enough to render it usurious, if in addition to the legal interest, it provide for the payment of excessive interest, upon a contingency. A stipulation even for a chance of advantage beyond legal interest, is illegal." Leavitt v. DeLauny, 4 N. Y. 369.

Among English and American decisions

supporting this conclusion may be cited: Barnard v. Young, 17 Vesey, 45; White v. Wright, 3 Barn. & Cress. 276; Smith v. Nicholas, 8 Leigh (35 Va.) 357, 361; Cleveland v. Loder & Draper, 7 Paige (N. Y.) 559; Browne v. Vredenburgh, 43 N. Y. 197.

The final contention of the motion for rehearing is that, though the contract exacts usury, yet no greater interest than 10 per cent. per annum has been paid by the debtors or received by the creditor. The contention rests on the premise that the term of the loan was ten years. The premise falls under the operation of the stipulation in the contract that the debtor's failure to pay any of certain interest installments should entitle the creditor to collect the principal sum loaned with usury. The necessary result of the successful maintenance of this suit to adjudge the contract usurious was nonpayment of any future interest. By the stipulations of the contract, the term of the loan, at the creditor's option, does not extend beyond the date of default in discharging any installment of interest. For the reduced term, which must now be looked to in determining the question of how much interest was promised or paid, the debtors promised and actually paid interest at a rate greater than 10 per cent. per annum. Under the stipulations of the contract, the creditor was entitled to retain money paid as interest for two years at the rate of 12 per cent. per annum. Under those stipulations, the creditor was further entitled to the principal sum loaned and additional interest at a rate in excess of 12 per cent. per annum. Under such circumstances, the creditor has surely collected, and the debtor has actually paid, greater interest than 10 per cent. per annum, and the creditor became liable for the statutory penalty, for which judgment was entered in this court.

The Galveston Court of Civil Appeals decided that double any interest collected under a contract tainted with usury was collectible under article 3106 of the Revised Statutes of 1895, and the Supreme Court denied a writ of error. American Building & Savings Association v. Daugherty, 27 Tex. Civ. App. 430, 66 S. W. 131, 135. The conclusion in this case that a greater rate of interest than 10 per cent. per annum was actually paid by the debtors and received by the creditor renders it unnecessary for us to determine whether changes subsequently made in the wording of the statute require a different decision from that of the court at Galveston.

In obedience to the behest of the Constitution to provide appropriate penalties to prevent contracts for a greater rate of interest than 10 per cent. per annum, the Legislature has declared that all written contracts whatsoever which may in any way, directly or indirectly, provide for a greater rate of interest than 10 per cent. per annum, shall be usurious and void, and that the person paying such greater rate of interest may "recover double the amount of such interest from the person, firm or corporation receiving the same." Article 16, § 11, Constitution; articles 5069 to 5073, R. S. Under these constitutional and statutory provisions, the illegality is the same whether the contract for usury takes the form of a stipulation for lawful interest, becoming a stipulation for usurious interest through reduction of the original term of the loan and increase in that which may be exacted of the debtor, at the creditor's option, on no other contingency than the debtor's default; or whether the contract is in the form of a stipulation for interest in excess of 10 per cent. per annum for a specific term. Both contracts provide for usury.

Since the judgment entered herein enforces the Constitution and statutes, the motion for rehearing must be, and is, overruled.

PIERSON, J., not sitting.