Robert J. BELZUNG, Appellant,

v.

CAPITAL BANK, Appellee.

No. 20192.

Court of Civil Appeals of Texas, Dallas.

Feb. 29, 1980.

Rehearing Denied April 9, 1980.

Don W. Davis, Collie, McSpedden, Roberts & Davis, Dallas, for appellant.

Charles A. Gall, Jenkens & Gilchrist, Dallas, for appellee.

Before GUITTARD, C. J., and ROBERTSON and STOREY, JJ.

ROBERTSON, Justice.

Capital Bank, appellee, filed this action to recover the balance alleged to be owing on a promissory note dated November 2, 1977, that was executed by Robert J. Belzung, appellant, and made payable to Capital. Belzung counterclaimed that that note and two preceding notes violated various provisions of the Texas Consumer Credit Act. Tex.Rev.Civ.Stat.Ann. art. 5069 (Vernon 1971 & Supp.1979). In a nonjury trial, the court entered judgment on the note for Capital, but also allowed Belzung an offset because Capital charged usurious interest on the November 2, 1977, note. On appeal Belzung complains of error in several of the

trial court's conclusions of law, in its failure to find that Capital contracted for usurious interest in each of the earlier notes, and in its calculation of the amount of the judgment. Capital also complains of error by the trial court in its finding of usury and in its calculation of the amount of the judgment. We hold that the November 2, 1977, note was not usurious, but that an unauthorized charge was made on one of the earlier notes requiring imposition of penalties against Capital. We therefore modify and, as modified, affirm in part, and reverse and render in part.

On August 2, 1976, Belzung executed a note in the original principal sum of $17,913.36 and placed a 1973 truck as security. This note was renewed and additional cash advanced on September 27, 1976. The principal sum of the renewal note was $23,908.50 and the 1973 truck continued as security. Belzung defaulted on this note; Capital then repossessed and sold the 1973 truck, applying the net proceeds to the balance remaining on the note. To facilitate repayment of the remainder, the November 2, 1977, note was executed by Belzung in the principal sum of $12,863.51. Belzung made one payment on this note and then defaulted. Capital declared the note immediately due and payable on March 27, 1978, and rebated unearned interest on the basis of the rule of 78ths.[1] Receiving no response to its demand for payment, Capital filed this suit.

■ By his first six points of error, Belzung contends that the trial court erred in not finding that Capital *contracted for* usurious interest in the first two notes because both of those notes contain acceleration clauses which allow Capital to mature and declare immediately due and payable all of the unearned interest, without rebate, resulting in an usurious interest charge. Both notes contain two acceleration clauses that read as follows:[2]

> Failure to pay any installment of this note when due or failure to carry out any of the terms, covenants and conditions securing this note shall authorize the holder of this note, at holder's option, to declare *the whole of this note* due and payable . . . .

> Remedies—Upon the occurrence of any such default at any time thereafter, lender may declare *the indebtedness secured hereby* immediately due and payable and may proceed to enforce payment of the same . . . . [Emphasis added].

Belzung argues that the emphasized language in each of these clauses allows Capital to accelerate and declare due all principal and interest provided for in each note, particularly since no express provision exists for rebate of unearned interest upon acceleration. The wording employed in the first clause, standing alone, would incline us to declare the notes usurious. *See Clements v. Williams*, 136 Tex. 97, 98, 147 S.W.2d 769, 769, (1941) ("mature paid *note*" indicates all installments due including unearned interest). The wording of the second clause, standing alone, however, would incline us to declare the notes not usurious. *See, e. g., id.* at 98, 147 S.W.2d at 769 (maturity of *debt* indicates unearned interest not collectible); *Southland Life Insurance Co. v. Egan*, 126 Tex. 160, 165–66, 86 S.W.2d 722, 724 (1934) ("whole of this indebtedness" does not authorize collection of unearned interest); *Marble Savings Bank v. Davis*, 124 Tex. 560, 563, 80 S.W.2d 298, 299 (1935) ("whole of the indebtedness" does not render contract usurious).

1. The rule of 78ths method of rebate is generally accepted as being synonymous with "the sum of the periodic balances" method called for by the Texas Consumer Credit Act. *See* Tex.Rev.Civ.Stat.Ann. art. 5069—4.01(6)(a) (Vernon Supp.1979). For a thorough discussion of the rule of 78ths see Neifeld, *The Rule of 78ths—The Sum of the Digits Method for Computing Refunds*, 13 Pers. Fin. L.Q. 8, 8 10 (1958); Comment, *Computing Interest Rebates Under the Rule of 78ths: A Formula for Usury Upon Default in Maximum-Interest Precomputed Credit Transactions*, 10 St. Mary's L.J. 94, 100 04 (1978).

2. The printed forms used for the notes of August 2, 1976, and September 27, 1976, are identical, and, therefore, our discussion as to the printed terms of the notes applies equally to both notes.

Belzung argues that despite the cases cited above this case is controlled by *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930), *motion for rehearing overruled*, 120 Tex. 400, 39 S.W.2d 11, *cert. denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931). In *Shropshire,* the notes and deeds that were alleged to be usurious contained language that upon default the notes "with interest and all other indebtedness and charges secured hereby" were due. Additionally, a second lien deed of trust provided that upon default "all of said notes hereby secured shall become due and payable." The transaction was held to be usurious; however, a key distinction exists between that case and the one presently before us. The transaction in *Shropshire* included a $4,200 note representing principal, and ten other notes, maturing annually over the term of the loan, representing only interest. In its reply to the motion for rehearing, the supreme court clarified its original opinion by indicating that it relied solely upon the language in the second lien deed of trust to arrive at its decision, because that language clearly and positively negated the possibility that the language first quoted above could be construed to abate the unearned interest. *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 414, 39 S.W.2d 11, 13, *cert. denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931). Thus, no doubt existed in that transaction that unearned interest would not be rebated.

The general rule of construction that has evolved from these cases was stated in *Smart v. Tower Land & Investment Co.,* 597 S.W.2d 333 (Tex.1980). That court reaffirmed that *in interpreting an alleged usurious contract, when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality." Id.* at 340–41. Here, each clause standing on its own would be subject to a clear and reasonable construction; however, the reasonable construction of each clause is diametrically opposed to the reasonable construction of the other. Thus, in construing

the two together, we must adopt the construction which renders the notes legal. Accordingly, we conclude that the trial court did not err in concluding that the August 2, 1976, and September 27, 1976, notes were not usurious, and in denying Belzung relief based on his allegation that they were usurious. Belzung's first six points of error are overruled.

Belzung's points of error seven through ten are premised upon his conclusion that each of the first two notes contracted for twice the amount of interest authorized by law. Because we hold that the first two notes were not usurious, we overrule these points of error.

■ The controversy concerning whether the third note is usurious centers on whether the amount of interest *charged* by Capital at the time it made demand on Belzung was greater than statutorily allowed. In this regard, Capital contends that since all the evidence supports the conclusion that Capital correctly applied the rule of 78ths in calculating the amount of unearned interest to be rebated, the only question is whether the rule of 78ths was an authorized method of rebate at the time of this transaction. Prior to recent amendments to the Consumer Credit Act, no specific provisions governed the method of calculating unearned interest rebates upon acceleration. Capital, however, urges several arguments for holding that the rule of 78ths was an allowable method of rebate and, therefore, if it was correctly employed, no usury could result. It first points out that the rule of 78ths was an authorized method of rebating unearned interest when a debtor *prepays* an installment loan. Tex.Rev.Civ.Stat. art. 5069—4.-01(6) (1971). Second, the legislature has subsequently enacted a provision allowing the rule of 78ths as a method of rebating unearned interest when a note is accelerated. Tex.Rev.Civ.Stat.Ann. art. 5069—4.-01(6)(a) (Vernon Supp.1979). Third, allowing the rule of 78ths as a method of rebating unearned interest in prepayment situations but not in acceleration situations would require a conscientious borrower who prepaid his loan to pay more interest than a

borrower who defaulted and had his note accelerated by the borrower. This argument is based on the fact that the rule of 78ths method of rebating unearned interest generally results in a slightly higher charge to the debtor than a calculation based on an actuarial or a pro-rata method. *See* Comment, *Computing Interest Rebates Under the Rule of 78ths: A Formula for Usury Upon Default in Maximum-Interest Precomputed Credit Transactions*, 10 St. Mary's L.J. 94, 100–01 (1978).

While these arguments are inviting, we decline to adopt the conclusion that Capital claims flows from them. Absent an explicit article in the statutes providing a method of rebate, we conclude that any generally accepted method of rebating unearned interest would be proper as long as it did not result in interest being charged in excess of that allowed by law. Tex.Rev.Civ.Stat. art. 5069—4.01(3) (1971); *see Chavez v. Aetna Finance Co.*, 553 S.W.2d 174, 176–77 (Tex. Civ.App.—San Antonio 1977), *writ ref'd n. r. e. per curiam*, 561 S.W.2d 799 (Tex.1978). Consequently, the question of usury in relation to the third note is not dependent upon whether the method of rebate was proper, but upon whether the rebate resulted in more interest being charged than was allowed by law.

Belzung's witness testified that the interest charged by Capital exceeded the interest rate allowed for installment loans, which is $8.00 add-on per $100.00 per annum. *See* Tex.Rev.Civ.Stat. art. 5069—4.-01(1) (1971). He also testified, however, that the interest charged by Capital was less than the maximum legal rate of interest of 10% per annum. *See* Tex.Rev.Civ. Stat. art. 5069—1.02 (1971). No dispute exists concerning the calculations of this witness other than Capital's contention in this court that theoretically if the amount of interest charged is less than the maximum legal rate of ten percent, it will also be less than the add-on rate authorized for installment loans.

This contention is not only based on allegedly mathematical proof, but also on the wording of the Consumer Credit Act. Article 5069—1.02 provides that the maximum nonusurious rate of interest on consumer loans is ten percent "unless otherwise authorized by law . . . ." One of the "otherwise authorized" rates is that provided for installment loans in article 5069—4.-01. That article indicates that certain lending institutions "*may* contract for and receive on any [installment loan] . . . an add-on interest charge of Eight Dollars per One Hundred Dollars per annum . . ." [Emphasis added]. By construing these two provisions together, we conclude that if it can be shown that the interest charged on a loan is less than that which would be charged at ten percent per annum, it does not matter that it also is shown that the interest charged is greater than another authorized rate. Of course, as Capital points out, this should not occur because the "other authorized" rates theoretically are greater rates than ten percent. Accordingly, we conclude that the trial court erred in finding that Capital charged usurious interest in attempting to collect the note of November 2, 1977. Inasmuch as Belzung's eleventh point of error is premised upon the conclusion that usury was charged in attempting to collect this note, we overrule this point of error.

Belzung next contends that the trial court erred in failing to allow him recovery with respect to the first note, because that note included a prohibited charge. We agree with this contention. No charges, other than those specifically authorized by statute, are allowed to be charged, contracted for, or received. Tex.Rev.Civ.Stat. art. 5069—4.01(7) (1971). Included in the amount financed on the first note was an "account service charge" of $5.00. The witness for Capital was unable to explain to what use this charge was put. Therefore, we must conclude that it was not a charge authorized by the Consumer Credit Act, and, consequently, that it subjected Capital to the penalty provisions of the Act. *See Bundrick v. First National Bank*, 570 S.W.2d 12, 17 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.).

Capital relies on *Hight v. Jim Bass Ford, Inc.*, 552 S.W.2d 490 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.), as support for its contention that this is a de minimus violation for which the courts will not impose the statutory penalties. The violation alleged to be de minimus in *Jim Bass Ford* was the failure of the lender to have the acknowledgment of delivery clause printed in ten-point bold type as is statutorily required. Tex.Rev.Civ.Stat.Ann. art. 5069—7.02(4) (Vernon Supp.1979). Instead, the clause was printed in nine-point or ten-point type—conflicting evidence existed on this point—but it was not bold type. The court held that since the purpose of the statute was achieved and since the borrower was not deceived, the court would not make "an elephant from a flea." 552 S.W.2d at 492. The instant case is distinguishable in that there was not even partial compliance with the statute which clearly prohibits *any* charges not specifically authorized. Accordingly, we sustain Belzung's twelfth point of error and allow Belzung the penalties as provided by article 8.01(b).

Belzung's thirteenth point of error is that the third note failed to state the agreed schedule of payment as statutorily required. Tex.Rev.Civ.Stat. art. 5069—4.-03(1)(b) (1971). The note provides that the amount of the loan is "[p]ayable in successive monthly installments as follows:

23 payments at $135.00
1 payments [sic] at $11,420.10
First Payment Due 11/26/77
Final payment Due 10/26/79."

Belzung argues that this clause fails to specify when the intervening payments are due. In his testimony at trial, however, Belzung testified that he knew that the payments were to be made on the 26th of each month. While knowledge may not cure a technical violation of the statute, we conclude that the clause included in the third note was sufficient to satisfy the requirement of article 5069—4.03 that the note show the agreed schedule of payments. This point of error is overruled.

Capital's crosspoints of error have all been disposed of by the disposition we have made of Belzung's points of error. We therefore proceed to calculate the proper award and render judgment. Capital is entitled to payment for the balance and charges owing on the November 2, 1977, note as of the date of maturity, plus interest from maturity to the date of judgment at ten percent per annum (as provided in the default clause of the note) on the principal balance, plus reasonable attorney fees and court costs. The record reflects that the balance and charges owing as of the date of maturity, March 27, 1978, totaled ($484.18 + 20.25) = $12,853.59. Between which default interest is based is calculated by subtracting the earned interest and late charges from this amount, i. e. $13,358.02 − $484.18 + 20.25) = $12,853.59. Between maturity and the date of judgment 456 days passed; consequently, the amount of interest allowed for that period will be $12,-853.59 × 10% × $^{456}$⁄₃₆₅ = $1,605.81. Reasonable attorney fees were calculated by the trial court to be $900.00.

Belzung is entitled to the penalty provided in article 5069—8.01(b), which is "an amount equal to twice the . . . interest contracted for, charged, or received but . . . not to exceed $4,000 in a transaction in which the amount financed is in excess of $5,000 and reasonable attorneys' fees fixed by the court."[3] The contracted for interest on the August 2, 1976 note is $1,983.36, and the trial court determined reasonable attorney fees for Belzung to be $3,500.00.

Accordingly, we modify and, as modified, affirm the judgment in part, and reverse and render in part as follows:

Capital

| | |
|---|---|
| Balance and charges owing at maturity on November 2, 1977 note | $13,358.02 |
| Interest at 10% to date of judgment | 1,605.81 |
| Attorney's fees (as determined by trial court) | 900.00 |
| Sub-total | $15,863.83 |

---

3. No question is raised in this case as to which amount (contracted for, charged, or received) is to be used in calculating the penalty, because the only amount indicated in the record is that contracted for.

Belzung

Twice contracted for interest on August 2, 1976 note     $ 3,966.72

Attorney's fees (as determined by trial court)     3,500.00

Sub-total     $ 7,466.72

TOTAL     $ 8,397.11

The trial court's order is therefore modified to read that Capital Bank have judgment against Robert J. Belzung in the amount of $8,397.11, together with court costs at trial, and interest at the rate of 10% per annum from the date of judgment. Costs of appeal will be divided one-half to each party.