**JIM WALTER HOMES, INC., et al., Petitioners,**

v.

**Curtis L. SCHUENEMANN et ux., Respondents.**

**No. C–2236.**

Supreme Court of Texas.

March 21, 1984.

326

Atlas & Hall, Charles Murray and Lisa Powell, McAllen, for petitioners.

Wood & Burney, Bruce D. Viles, Corpus Christi, for respondents.

RAY, Justice.

Curtis and Phyllis Schuenemann brought this suit against Jim Walter Homes, Inc., and its assignee, Mid-State Homes, Inc., alleging that the contract in which Jim Walter Homes agreed to construct a house for the Schuenemanns violated the Texas Deceptive Trade Practices-Consumer Protection Act, TEX.BUS. & COM.CODE ANN. § 17.41 et seq. (DTPA) and Chapter 6 of the Texas Consumer Credit Code, TEX.REV.CIV.STAT.ANN. art. 5069–2.01 et seq. (Credit Code). The DTPA claim was settled. The issue presented for decision is whether the acceleration of maturity clauses in the contract call for the collection of unearned time price differential from the Schuenemanns, with the result that Jim Walter Homes contracted for the right to receive a time price differential more than twice that allowed by Chapter 6 of the Credit Code and is thus subject to the penalties set forth in section 8.02 [1] of the Code. The trial court answered this question affirmatively and granted the Schuenemanns' motion for summary judgment. Pursuant

1. At all times material to this suit, article 5069–8.02 of the Credit Code provided in pertinent part as follows:

Any person who violates this Subtitle by contracting for, charging or receiving interest, time price differential or other charges which are in the aggregate in excess of double the total amount of interest, time price differential and other charges authorized by this Subtitle shall forfeit to the obligor as an additional penalty all principal or principal balance, as well as all interest or time price differential, and all other charges, and shall pay reasonable attorneys' fees actually incurred by the obligor in enforcing the provisions of this Article....

to sections 8.01 and 8.02 of the Credit Code, the trial court ordered that the Schuenemanns recover from Jim Walter Homes a penalty totalling $64,385.29, as well as attorney's fees of $32,192.64. The court of appeals affirmed. 655 S.W.2d 264. We affirm the judgments of the courts below.

 Whether the inclusion of an acceleration clause, and the attendant contingency that excess unearned interest may be collected or retained, makes a contract usurious is a question of construction. *Smart v. Tower Land and Investment Company,* 597 S.W.2d 333 (Tex.1980). In construing the contract, we initially follow the well established principle that, in order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together. *Jones v. Kelley,* 614 S.W.2d 95 (Tex.1981); *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046 (1937). Three documents, all executed on February 9, 1976, comprised the contract in issue here: a "Building Contract," an "Installment Mechanic's Note" and a "Mechanic's Lien Contract With Power of Sale."

 The building contract shows that the Schuenemanns had the option to purchase their house for a "cash price" of $17,735 or a "time price" of $37,008. It indicates that the Schuenemanns elected to purchase on a time price basis. The $19,273 time price differential[2] is denoted a "finance charge" in the building contract. The total of $37,008 is payable in one hundred eighty monthly installments of $205.60 each. The annual percentage rate is stated as 11.4 percent. The building contract contains the following provision:

The total of payments of $37,008.00 shall be evidenced by a promissory note payable in the time and manner aforesaid, which said promissory note shall be secured by a first (MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST), encumbrancing the above described property. The promissory note and (MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST), shall have customary covenants and conditions included therein and shall bear interest from maturity at the rate of 6% per annum until paid and *shall provide that in event of default in payment of any installment provided for hereunder for a period of thirty (30) days, the holder thereof may at its option declare all of the remainder of said debt immediately due and collectible* and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time (emphasis supplied).

The "Installment Mechanic's Note" (installment note) bears a face amount of $37,008, payable in one hundred eighty monthly installments of $205.60 each. Only by referring to the building contract do we know that $19,273 of the face amount of the installment note is a finance charge. The following provision is found in the installment note:

It is understood and agreed that *in the event of default in payment of any installment for a period of thirty days, the holder of this note may, at its option, declare all the remainder of said installments due and said note will mature and it shall at once become due and payable* and the Mechanic's Lien or the Deed of Trust Lien herein mentioned, either or both, shall become subject to

**2.** "Time price differential" is defined in article 5069–6.01(h) as "the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time . . . ." Generally, if a sale contract shows on its face that there is a cash price and a deferred payment price which are revealed to the purchaser at the time of the making of the contract, and that the finance charges are set forth as such, the amount of

such finance charges will not be deemed interest, but a time price differential paid for the privilege of purchasing property to be paid for by the buyer in installments over a period of time. E.g. *Rotello v. International Harvester Co.,* 624 S.W.2d 249, 251 (Tex.App.—Dallas 1981, writ ref'd n.r.e.); *Mid States Homes, Inc. v. Sullivan,* 592 S.W.2d 29 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.)

foreclosure proceedings, as the holder may elect (emphasis supplied).

The "Mechanic's Lien Contract with Power of Sale" (lien contract) secures payment of the installment note by granting to a trustee and his successors the house and the property on which it is built. It includes the following provision:

> Should owners make default in the punctual payment of said note, or any part thereof, as the same becomes due and payable ... *the holder of said note may, at his option, declare the entire remaining unpaid balance of said note immediately due,* and, if not immediately paid then in that event the Trustee or his successor is hereby authorized and empowered to sell said property ... (emphasis supplied).

■ It is undisputed that Jim Walter Homes has made no attempt to accelerate the Schuenemanns' obligation. The Schuenemanns seek to recover the penalties provided for in section 8.02 of the Code on the ground that, by virtue of the acceleration provisions quoted above, Jim Walter Homes "contracted for" the collection of time price differential in excess of double the amount allowed by section 6.02(9)(a) of the Credit Code. The simple act of contracting for usurious time price differential is in violation of the Credit Code and sufficient to trigger the penalties therein. *See Tanner Development Co. v. Ferguson,* 561 S.W.2d 777, 778 (Tex.1977) (on motion for rehearing). There need not be intent to actually charge time price differential which violates the Credit Code, but merely the "intent to make the bargain made." *See Cochran v. American Savings & Loan Ass'n of Houston,* 586 S.W.2d 849, 850 (Tex.1979).

■ Setting aside the building contract for the moment, we first determine whether the above-quoted acceleration provisions in the installment note and lien contract call for the collection of unearned time price differential. We are guided in our interpretation by the many pre-Credit Code cases which addressed the issue of whether particular acceleration of maturity provi-

sions called for the collection of unearned interest. These cases establish that the terminology employed in acceleration provisions is of utmost importance. One such case crucial to our decision here is *Clements v. Williams,* 136 Tex. 97, 147 S.W.2d 769 (1941). That case involved an allegedly usurious note secured by a vendor's lien on real property. The note was payable in monthly installments which included both principal and interest, just as the installment note in the instant case is payable in monthly installments which include both principal and time price differential. In *Clements,* the note provided that upon default in payment, the holder at his election might "mature said note, and it shall at once become due and payable ...." In a per curiam opinion, the court stated:

> Such default maturity clause permitted the holder of this note to mature all installments as written in it, including unearned interest.... Such an instrument is usurious in its inception [citation omitted]. If the default maturity clause had merely provided for the maturity of the debt, the note would not be usurious because unearned interest could not be collected [citation omitted].

*Id.* at 769. The *Clements* case thus points out an important distinction between acceleration clauses which provide for the maturity of a "debt" and acceleration clauses which provide for the maturity of a "note." A provision which states that a "debt" may be matured does not call for the collection of unearned interest, because interest does not become part of the "debt" until it is earned. *See Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d 935, 937 (1935). However, as *Clements* indicates, when it is provided that a "note" may be matured, the obvious intent of the contracting parties is that the entire face amount of the note, including unearned interest, is to be collected upon acceleration. *See also, Commerce Trust Co. v. Best,* 124 Tex. 583, 80 S.W.2d 942 (1935); *Manning v. Christian,* 124 Tex. 517, 81 S.W.2d 54 (1935); *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 30 S.W.2d 282, *on re-*

*hearing*, 120 Tex. 400, 39 S.W.2d 11, *cert. denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931); *Deming Inv. Co. v. Giddens*, 120 Tex. 9, 30 S.W.2d 287 (1930).

■ In the instant case, the installment note provides that upon acceleration, the holder may declare "all of the remainder of said installments due and said note will mature and it shall at once become due and payable," and the lien contract states that upon acceleration the holder may "declare the entire unpaid balance of said note immediately due." We view the language in these two instruments as similar enough to the default maturity clause in *Clements v. Williams*, 136 Tex. 97, 147 S.W.2d 769, to make that case controlling. We therefore hold that the default maturity clauses in the installment note and lien contract unambiguously call for the collection of unearned time price differential.[3] It follows that Jim Walter Homes contracted to charge time price differential in excess of double the amount allowed by section 6.02(9)(a) of the Credit Code and is subject to the penalties imposed by both sections 8.01 and 8.02 of that Code.

We find unpersuasive the authorities relied upon by Jim Walter Homes for the proposition that the acceleration provisions of the installment note and lien contract do not call for the collection of unearned time price differential. Jim Walter Homes cites the cases of *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.) and *Tradewinds Ford Sales, Inc. v. Caskey*, 600 S.W.2d 865 (Tex.Civ.App.—Eastland), *aff'd in part and rev'd in part on other grounds*, 616 S.W.2d 935 (1980), *appeal dismissed and cert. denied*, 454 U.S. 1074, 102 S.Ct. 624, 70 L.Ed.2d 607 (1981) in support of its argument that the acceleration provision in the installment note, which provides that upon default the holder may

"declare all of the remainder of said installments due and said note will mature and it shall at once become due and payable," does not call for the collection of unearned time price differential. In those cases, an acceleration provision in a retail installment contract which allowed the seller "to declare all amounts due or to become due hereunder" upon default was held not to call for the collection of unearned interest. Prior to those cases, language similar to the phrase "all amounts due or to become due hereunder" had been held not to call for the collection of unearned interest. *Sinclair v. Mack Trucks, Inc.*, 355 S.W.2d 563 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.) (acceleration of total amount "due thereunder" does not call for the collection of unearned interest); *Davis v. Volunteer State Life Ins. Co.*, 135 S.W.2d 588 (Tex.Civ.App.—Texarkana 1939, writ ref'd) (acceleration of "all sums herein agreed to be paid" does not call for the collection of unearned interest). Thus, the decisions in *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513, and *Tradewinds Ford Sales, Inc. v. Caskey*, 600 S.W.2d 865, were supported by authority. In the instant case, the language in the installment note, referring as it does to "said note" becoming due and payable, is more similar to the language held usurious in the *Clements* case, and we hold that case controlling in our interpretation of the installment note.

The case of *Southwestern Inv. Co. v. Mannix*, 557 S.W.2d 755 (Tex.1977) is cited in support of the argument that the phrase "entire remaining unpaid balance" found in the lien contract does not allow the collection of unearned time price differential. In *Mannix*, this court held that the following provision did not call for the acceleration of unearned interest: "Should the Debtor fail to pay such indebtedness or any part thereof when due, then the entire unpaid bal-

---

**3.** We cannot agree with Jim Walter Homes' contention that the terms "note" and "installment" are ambiguous. The court held the term "note" unambiguous in the *Clements* case, and explained the term as meaning "all installments." In the installment note involved here, the term "installments" clearly means payments of

$205.60 per month over a period of one hundred eighty months. *See Commercial Credit Corp. v. Chasteen*, 565 S.W.2d 342 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.); *Roark v. Dickinson Trust Co.*, 89 S.W.2d 278 (Tex.Civ.App.—Eastland 1936, no writ).

ance shall, at the Secured Party's option, become immediately due and payable ...." Other parts of the contract involved in that case made it clear that the phrase "entire unpaid balance" referred to unpaid principal only. *Id.* at 765. In the instant case, the phrase "entire remaining unpaid balance" found in the lien contract is modified by the prepositional phrase "of said note." The addition of this prepositional phrase, particularly the word "note," distinguishes the language of the lien contract from the language interpreted in *Mannix* and brings it within the ambit of our holding in *Clements v. Williams*, 147 S.W.2d 769.

Jim Walter Homes argues that the acceleration clauses in the installment note and lien contract must be read with reference to the above-quoted provision in the building contract. Cases decided prior to the enactment of the Credit Code held that language similar to that found in the building contract provision does not call for the collection of unearned interest. *See Southland Life Insurance Co. v. Egan*, 126 Tex. 160, 86 S.W.2d 722, 724 (1935) (acceleration of "whole of debt herein secured" does not provide for the collection of unearned interest); *Marble Savings Bank v. Davis*, 124 Tex. 560, 80 S.W.2d 298, 299 (1935) (acceleration of "the whole of the indebtedness" does not provide for the collection of unearned interest). However, to regard the quoted provision in the building contract as relevant in interpreting the acceleration provisions of the installment note and lien contract would be to disregard the plain language of these instruments as well as established rules of contract construction. The interpretation of a written contract is a quest for the intention of the parties to it. *Fox v. Thoreson*, 398 S.W.2d 88 (Tex.1966). It is apparent from the quoted language in the building contract that the parties did not intend that provision to determine their rights and duties if the Schuenemanns' obligation were accelerated. The provision merely

states what *shall be provided* in other instruments in the event the Schuenemanns default in payment; the provision is no more than an inaccurate description of the terms of acceleration actually contracted for in the installment note and lien contract.[4] The variance between the description of the terms of acceleration to be agreed upon and the terms of acceleration actually agreed upon is obviously due to the use of printed form contracts. *Cf. Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935, 939 (1935). Clearly, the actual agreement between the parties with regard to acceleration of the Schuenemanns' obligation is contained in the quoted provisions of the installment note and lien contract. This agreement is set forth in consistent and unambiguous terms which have a definite legal effect. *See Clements v. Williams*, 147 S.W.2d 769. We therefore must give effect to the intention of the parties as expressed in these provisions. *Coastal Plains Development Corp. v. Micrea*, 572 S.W.2d 285, 287 (Tex. 1978); *Anderson Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 801, 805 (1940); *Reconstruction Finance Corp. v. Gossett*, 130 Tex. 535, 111 S.W.2d 1066, 1074 (1938).

Although at the outset we construed all three instruments together to determine the *entire agreement* between the parties, we conclude that for the limited purpose of determining the terms of acceleration for which the parties contracted, the clear terms of the acceleration provisions in the installment note and lien contract should be interpreted without reference to the description thereof contained in the building contract. Courts have shown a reluctance to hold that acceleration of maturity provisions which clearly call for the collection of unearned interest are vitiated by mere intimations of contrary intent found elsewhere in the contract. *See Manning v. Christian*, 124 Tex. 517, 81 S.W.2d 54 (1935); *Roark v. Dickinson Trust Co.*,

---

**4.** It should be noted that the name of the "Mechanic's Lien Contract With Power of Sale" is also misdescribed in the building contract as a

"(MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST)."

89 S.W.2d 278 (Tex.Civ.App.—Eastland 1936, no writ). Invoking the rule that the documents are to be construed together does not in any way imply that we must give weight to a purported description of acceleration terms *to be* agreed upon, when the terms of acceleration *actually* agreed upon are set forth in unambiguous language. We think this especially true when the purported description conflicts with the clear and consistent terms of a negotiable note and a mechanic's lien contract, instruments which were designed to stand on their own.

In connection with its argument that the acceleration terms described in the building contract should be given an effect equal to the acceleration provisions contained in the installment note and lien contract, Jim Walter Homes asserts that *Belzung v. Capital Bank*, 598 S.W.2d 14 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) is determinative of this case. The *Belzung* case involved a note which contained two acceleration clauses, one of which was usurious and one of which was nonusurious. The note was thus subject to a reasonable construction which rendered it legal as well as a reasonable construction which rendered it illegal. Faced with such a clear choice, the court properly adopted the legal construction and concluded that the note was nonusurious. Jim Walter Homes argues that since language in the building contract indicates that unearned time price differential is not to be collected upon acceleration, the contract is subject to a reasonable legal construction even if the acceleration provisions in the note and lien contract violate the Credit Code.

*Belzung* differs from this case in two significant ways. First, the acceleration provision held to be nonusurious in *Belzung* was an actual, operative agreement about the terms of acceleration. In the instant case, the nonusurious language in the building contract is merely an inaccurate description of the acceleration terms actually agreed upon by the parties. The language in the building contract, by its own terms, does not have the same binding effect as the nonusurious acceleration provision upon which the *Belzung* case turned.

Second, the note involved in the *Belzung* case showed on its face that part of the payments required by the note were for interest. In the instant case, the installment note signed by the Schuenemanns simply bears a face amount of $37,008 with no indication whatever that this sum includes time price differential. That this is a crucial difference is shown by the case of *Manning v. Christian*, 81 S.W.2d 54. The notes involved in *Manning* each contained an acceleration clause which provided that upon default the holder might "immediately mature all of said notes and the same shall become due and payable at once." There was no indication in these notes that they were given for interest. The notes were secured by a second deed of trust which stipulated that the notes were given for interest and which contained a nonusurious acceleration clause. The court acknowledged that the acceleration clause in the deed of trust did not call for the collection of unearned interest, but nevertheless held the contract to be usurious. The court stated:

> [T]he vice in this contract does not arise by reason of the acceleration clause in the deed of trust, but is found in the ... notes themselves. Again, while the second deed of trust refers to these notes as a part of the agreed interest on the principal indebtedness, the notes themselves do not on their face show that they were for additional interest. This, to our minds, tends to show that the lender, for the purpose of being able to mature all of these notes in case of default in one, designedly failed to disclose on their face that they were interest notes. *This, together with the precise and positive wording of the notes themselves that the holder might mature all of said notes, discloses an intention to mature them and make them payable in full even though they represented only unearned interest* (emphasis supplied).

*Id.* at 55.

The similarities between *Manning* and the instant case are striking. The docu-

ments involved in each case were executed at the same time, for the same purpose, and in the course of the same transaction. The acceleration provision held to be usurious in the *Manning* case is much like the acceleration provision in the installment note signed by the Schuenemanns. The notes involved in the *Manning* case did not indicate that they were given for interest, just as the installment note signed by the Schuenemanns does not disclose on its face that it was given in part for time price differential. In *Manning*, there was a deed of trust which contained a nonusurious acceleration provision *actually* agreed upon; in the instant case, there is a building contract which contains language describing a nonusurious acceleration provision *to be* agreed upon. This court's holding in *Manning* compels the conclusions that the installment note signed by the Schuenemanns discloses an intent to collect unearned time price differential upon acceleration of the obligation, and that this intent is not vitiated by the nonusurious description of acceleration terms to be agreed upon which is found in the building contract.

■ We are mindful of the well established rule in this state that a contract which is alleged to be usurious on the ground that it calls for the collection of unearned interest is to be construed as complying with the law, if it is reasonably susceptible of such an interpretation. *Smart v. Tower Land & Investment Co.*, 597 S.W.2d 333 (Tex.1980); *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282, *on rehearing*, 120 Tex. 400, 39 S.W.2d 11, *cert. denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931). We continue to adhere to this rule in determining whether a contract calls for the collection of unearned time price differential in violation of the Credit Code. However, given this court's holdings in *Clements v. Williams*, 136 Tex. 97, 147 S.W.2d 769, and *Manning v. Christian*, 124 Tex. 517, 81

S.W.2d 54, the language of the acceleration provisions in the installment note and lien contract must be interpreted as a plain, unambiguous stipulation that upon acceleration of maturity, the full face amount of the note, including unearned time price differential, is to be collected from the Schuenemanns. We are unable to discover provisions in other portions of the contract sufficient to negative the intention plainly declared in these provisions to collect unearned time price differential in the event of acceleration of maturity. The court cannot depart from the expressed terms of the acceleration clauses contained in the installment note and lien contract to make lawful what the parties have made unlawful. *See Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 39 S.W.2d 11, 12 (on rehearing).

■ Jim Walter Homes argues that the instant case should be decided under a different standard than the *Clements* case, because the Consumer Credit Code provides much harsher penalties than did the usury statute in effect at the time *Clements* was decided. This court recognized that the usury statute involved in *Clements*, being penal in nature, was to be strictly construed. *Commerce Trust Company v. Best*, 124 Tex. 583, 80 S.W.2d 942, 946–47 (1935). Jim Walter Homes' argument is that the Credit Code should be more strictly construed than the old usury statute because it imposes harsher penalties. However, we are obliged to construe the Credit Code in a manner that comports with legislative intent and furthers the purposes of the statute. *See Coastal States Gas Producing Co. v. Pate*, 158 Tex. 171, 309 S.W.2d 828 (1958); TEX.REV.CIV. STAT.ANN. art. 10, subds. 6, 8. Our holding in this case is consistent with that obligation. The plain meaning of the acceleration provisions in the installment note and lien contract would deceive the very individuals the legislature intended to protect, namely "the uneducated, the unsophisticated, the poor and the elderly,"[5] into

---

5. Declaration of Legislative Intent, Texas Laws 1967, Chapter 274, Section 1, at 608. TEX.REV. CIV.STAT.ANN., Vol. 15, pp. 1–2 (1971).

believing that creditors could, with the blessing of the law, collect all unearned time price differential upon acceleration of the obligation. *See Southwestern Inv. Co. v. Mannix*, 557 S.W.2d at 763. The legislature intended to penalize a creditor who included such provisions in a retail installment contract in order to protect the citizens of this state from abusive practices in credit transactions.[6]

The judgments of the courts below are affirmed.

ROBERTSON, J., concurs with an opinion.

McGEE, J., dissents with an opinion joined by BARROW and KILGARLIN, JJ.

ROBERTSON, Justice, concurring.

I concur in the Court's holding.

It will generally be presumed in cases such as this that the parties intended a non-usurious contract. "The contract under construction will not be found usurious on its face unless it expressly entitles the lender, upon the happening of a contingency or otherwise to exact interest at a greater rate than that allowed by law." *Smart v. Tower Land and Investment Company*, 597 S.W.2d 333, 341 (Tex.1980). In the *Tower Land and Investment Company* case, this Court was asked to construe a note which provided for the advance payment of interest for the first six years, followed by payments of the principal amount, with an acceleration clause allowing for the maturity of the note on default. Although the note provided that in the event of acceleration there would be no obligation to refund any of the interest, it was silent as to whether interest could be credited to unpaid balance. The note was therefore susceptible to a legal construction. *See Smart v. Tower Land and In-*

*vestment Company*, 582 S.W.2d 543 (Tex. Civ.App.—Dallas 1979) *rev'd* 597 S.W.2d 333 (Tex.1980). This Court nevertheless held the note usurious on the ground that it expressed an intent to allow the payee or holder on acceleration to retain the excess unearned interest. 597 S.W.2d at 341.

In contrast, the Court in *Belzung v. Capital Bank*, 598 S.W.2d 14 (Tex.Civ.App.— Dallas 1980, writ ref'd n.r.e.) was faced with two conflicting acceleration clauses in a note, one which was clearly usurious and the other which was not. Under that set of facts, the note was properly construed to be nonusurious. The case at bar is distinguishable, involving three different clauses in three different instruments. The building contract is arguably non-usurious, although even this conclusion is doubtful. The other two instruments, the installment note and mechanic's lien, are usurious. By its own terms, the building contract looks to the installment note and anticipates certain covenants, conditions, and default provisions. The provisions in that note are usurious. Under these facts, I believe the parties contracted for the payment and retention of unearned interest embodied in the monthly installments.

McGEE, Justice, dissenting.

I dissent.

The only issue on appeal is whether, because of the technical language of the acceleration provisions, Jim Walter Homes, Inc. has contracted to collect time-price differential in excess of double the amount allowed by law in violation of section 8.02 of the Credit Code. The court of appeals affirmed the trial court's award to the Schuenemanns of penalties totalling $64,-385.29. Of this amount, $38,546.00 represented damages for a violation of section 8.01. This portion of the judgment was not

---

**6.** In literally scores of cases, the courts of this state have been called upon to decide whether a contract is usurious because it contains an acceleration provision which allows the collection of unearned interest or finance charges. *See* Annot. 66 A.L.R.3d 650 (1975). In view of this, we fail to understand why acceleration clauses are drafted which do not include a sentence

expressly disavowing any intention to collect excessive unearned interest or finance charges in the event the obligation is accelerated. To leave the matter open to doubt is to invite litigation and risk the harsh penalties of article 5069. To settle the matter clearly in the contract between the parties is a service to the creditor, the debtor, and the taxpayers of this state.

appealed. The effect of the lower court's award was to give the Schuenemanns a free house.

This is a case in which there have essentially been no damages. The Schuenemanns allege the acceleration provisions in the contract would, under hypothetical circumstances, entitle Jim Walter Homes, Inc. to collect double the permissible finance charge. Jim Walter completed the house and the Schuenemanns moved in. The Schuenemanns are not in default. Jim Walter has never attempted or threatened to accelerate the note or the other contract documents in question. Jim Walter has not charged or attempted to collect from the Schuenemanns any unearned time-price differential.

In evaluating the issue before us, this court should bear in mind certain presumptions, the measure of proof applied when a penal statute is involved, and general rules of contract construction.

To begin with, there is a presumption that in contracting the parties intended to obey the law and intended a non-usurious contract. *Smart v. Tower Land and Investment Co.*, 597 S.W.2d 333, 340 (Tex. 1980); *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935, 936–37 (1935); *Marble Sav. Bank v. Davis*, 124 Tex. 560, 80 S.W.2d 298, 299 (1935). "[W]hen the contract by its terms, construed as a whole, is doubtful, or even susceptible to more than one reasonable construction, the court will adopt the construction which comports with legality." *Smart v. Tower Land and Investment Co.*, 597 S.W.2d 333, 340–41 (Tex.1980); *W.E. Grace Manufacturing Co. v. Levin*, 506 S.W.2d 580, 584 (Tex.1974); *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282, *on rehearing*, 120 Tex. 400, 39 S.W.2d 11, *cert. denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931); *Haley v. Pagan Lewis Motors, Inc.*, 647 S.W.2d 319, 320 (Tex.App. —Corpus Christi 1983, writ ref'd n.r.e.).

The measure of proof is especially strong in Credit Code cases. The Texas Consumer Credit Code is penal in nature. It provides for severe penalties that include not only double the amount of interest or, in this case, time-price differential, but also provides for the forfeiture of the principal amount of the note and attorney's fees. It is the practice and policy of Texas courts to strictly construe penal statutes. *Texas Commerce Bank-Arlington v. Goldring*, 665 S.W.2d 103 (Tex.1984); *First State Bank of Bedford v. Miller*, 563 S.W.2d 572, 577 (Tex.1978). "[T]he more severe the penalty, the more rigid the construction." *Eubanks v. State*, 203 S.W.2d 339, 340 (Tex.Civ.App.—Austin 1947, writ ref'd).

The majority relies heavily upon cases decided in the 1930's involving a repealed usury statute. The penalties under the Credit Code (as amended in 1977) are much harsher than those involved under prior usury law. The severe nature of these penalties compels a more strict construction of section 8.02 than that given by courts interpreting the old usury statute.

The documents in question constitute the contract between the parties and must be construed together. Section 6.02(6)(a) of the Texas Consumer Credit Code expressly provides that a retail installment contract, such as the one before us, may be contained in more than one instrument. Tex. Rev.Civ.Stat.Ann. art. 5069(6)(a) (Vernon 1971). It is well settled that separate instruments, executed as a part of the same transaction and dealing with the same subject matter are to be construed together. *See, e.g., Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981); *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959); *Veal v. Thomason*, 138 Tex. 341, 159 S.W.2d 472, 475 (1942). This is true whether or not the documents make express reference to each other.

I realize it is not the lender's subjective intent to charge usury that makes a loan usurious, but rather his intent to make the bargain that was made. *Alamo Lumber Co. v. Gold*, 661 S.W.2d 926 (Tex.1983). In determining what bargain the parties made, however, the intent of the parties, as expressed in their agreement, is of primary concern. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). It is well settled that the question of usury must be determined by a

construction of all the documents constituting the loan transaction, *interpreted as a whole* and in the light of the attending circumstances. *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046, 1048 (1937); *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935, 936 (1935); *Spanish Village, Ltd. v. American Mortgage Co.*, 586 S.W.2d 195, 199 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). Moreover, the rule applies "even though the result be to modify one of the instruments which, standing alone, would have a different construction." *Rudes v. Field*, 146 Tex. 133, 204 S.W.2d 5, 7 (1947).

In this case, the building contract expressly refers to the mechanics' lien and note and requires that those documents provide for optional acceleration of "all of the remainder of said debt." The provision in the building contract that "all of the remainder of said debt" can be accelerated upon default does not call for the collection of usurious interest. *Southwestern Investment Co. v. Mannix*, 557 S.W.2d 755, 765 (Tex.1977); *Southland Life Insurance Co. v. Egan*, 126 Tex. 160, 86 S.W.2d 722, 724 (1935), and does not call for the collection of unearned time-price differential under the Consumer Credit Code. *Ford Motor Credit Co. v. McDaniel*, 613 S.W.2d 513, 518 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

In *Clements v. Williams*, 136 Tex. 97, 147 S.W.2d 769 (1941), we held a note to be usurious because it permitted the holder to "mature said note . . ." upon default. We further held, however, that if the default maturity clause had provided for the maturity of "the *debt*," the note would not be usurious. *Id.* at 769. The majority holds that the mere use of the words "of said note" in the note and lien make the entire transaction illegal. I disagree. This holding ignores the language in the building contract and note that "the remainder of said debt" and "the remainder of said installments" may be accelerated upon default. According to *Clements*, such language is legal and does not call for the collection of unearned interest in the event of default.

The decision in *Belzung v. Capital Bank*, 598 S.W.2d 14 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) is on point and supports a legal construction of the documents before us. In *Belzung*, the documents before the court, consisting of two notes, each contained two acceleration provisions. The first acceleration clause provided for the acceleration of "the whole of this note" and is similar to the acceleration provisions in the note and lien involved here. That provision, standing alone, is susceptible to a usurious interpretation. *Clements v. Williams*, 136 Tex. 97, 147 S.W.2d 769, 769 (1941). The other provision called for the acceleration of "the indebtedness secured hereby" and is similar to the provision in the building contract involved here. That provision is susceptible to a legal interpretation. *Southwestern Investment Company v. Mannix*, 557 S.W.2d 755, 765 (Tex. 1977). The *Belzung* court stated "the reasonable construction of each clause is diametrically opposed to the reasonable construction of the other." *Id.* at 16. The court, citing our decision in *Smart v. Tower Land and Investment Company*, 597 S.W.2d at 333, held that since the contract, like the contract now before us, was susceptible to a legal interpretation, it was bound to adopt the construction which rendered the contracts legal. *Id.* Thus, although there is language in the documents that is susceptible to a construction that calls for the collection of unearned time-price differential, this language is not controlling.

The Schuenemanns claim the documents should not be construed together because the note was negotiable and could have been assigned to a holder in due course. This contention is without merit. First this controversy involves only the original parties to the documents. No holder in due course is involved. Second, the rule that several instruments executed as part of the same transaction will be read together applies equally when one of the instruments is a note. *Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761, 763 (Tex. Civ.App.—Austin 1974, writ ref'd n.r.e.); *B*

**336**

*& B Pharmacy and Drug, Inc. v. Lake Air National Bank of Waco,* 449 S.W.2d 340, 341 (Tex.Civ.App.—Waco 1969, writ dism'd) (loan agreement, note, and deed of trust, being in course of single transaction are to be considered as though they were a single instrument). This rule has specifically been applied in usury cases. *Spanish Village, Ltd. v. American Mortgage Co.,* 586 S.W.2d 195, 199–200 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.) (contract documents consisting of note, deed of trust, Federal Housing Insurance Commitment, and various other documents when construed together were not usurious); *Beavers v. Taylor,* 434 S.W.2d 230, 231 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). I would hold that the rule allowing documents executed as part of the same transaction to be construed together applies equally when one of the instruments is a negotiable instrument, at least as between the original parties to the agreement.

The documents here at issue contain language that clearly does not call for the acceleration of unearned time-price differential. When construed together, they are at the very least susceptible to an interpretation that is legal and does not call for the acceleration of unearned time-price differential. It is that construction which this court should adopt.

I would reverse the award of penalties under section 8.02 and render judgment that the Schuenemanns take nothing under that section.

BARROW and KILGARLIN, JJ., join in this dissenting opinion.