

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-231-CV

---

JOSEPH C. MCDOWELL, JR.                                                     APPELLANT

V.

RICHARD C. BIER                                                                 APPELLEE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Joseph C. McDowell, Jr. appeals a judgment entered on the jury's verdict in favor of Appellee Richard C. Bier on Bier's breach of contract claim. In seven issues, McDowell challenges the jury's finding that he is personally liable to Bier for money owed to Bier. We will affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

McDowell performs commercial real estate development and oversees commercial real estate companies that he either owns or has an interest in. Bier is a subcontractor for a commercial construction company. Between 1986 and February 2003, Bier performed work or otherwise engaged in business transactions with McDowell or with entities owned or controlled by McDowell.[2] McDowell, the entities he owns or controls, or both consequently incurred debts or obligations to Bier.

In an effort to "wipe[] the slate clean" of a number of issues that had developed over a period of years, on February 7, 2003, Bier, McDowell, entities effectively controlled by McDowell, and several other entities entered into a "Compromise Settlement Agreement and Release" (the "Settlement Agreement"). According to the Settlement Agreement, for various considerations, the parties agreed to a "full, final, and complete settlement . . . and release of any and all claims . . . and causes of action of whatever kind . . . resulting or arising in any way from business relationships between the Parties hereto prior to the date of this Agreement." McDowell and Bier both signed the Settlement Agreement in their individual capacities, and McDowell signed the

---

[2] McDowell is President of Five Star Development Co., Inc. Five Star is the general partner of FM Parker Square, Ltd.

Settlement Agreement as a member of CDR Resources, L.L.C.; on behalf of Five Star as its President; on behalf of FM Parker Square by its general partner, Five Star; and in his capacity as the controlling interest owner of any other entity that might have a claim against or obligation to "Heatherwood Group."[3]

Also on February 7, 2003, Bier executed a document entitled "Agreement of Sale and General Release" (the "Release").[4]  According to the Release, in exchange for $234,000—payable in the amount of $50,000 on February 10, 2003, and the remaining $184,000 on March 10, 2003—Bier agreed to transfer his partnership interest in FM Parker Square and to release McDowell and any entity controlled by McDowell "from any and all . . . actions and causes of action[] . . . relating . . . to" Bier's investment in FM Parker Square and his employment or independent contractor relationship with McDowell and any entity controlled by McDowell.  Only Bier signed the Release.

Bier received his first payment under the terms of the Release shortly after February 10, 2003:  a check dated February 11, 2003, in the amount of $50,000 that was drawn on FM Parker Square.  Bier did not receive the remaining $184,000 on March 10, 2003, as contemplated by the terms of the

[3] "Heatherwood Homes, Ltd.," through its general partner CDR Resources, was a party to the Settlement Agreement.

[4] Bier testified that he executed the Release the same day that he executed the Settlement Agreement.

3

Release. Instead, he received a wire-transfer payment in the amount of $20,000 from Five Star on March 1, 2004, and a second wire-transfer payment in the amount of $20,000 from Five Star on May 21, 2004.[5] No further payments were made to Bier.

In April 2006, Bier sued McDowell personally for breach of contract and for fraud. Bier alleged in part that McDowell had failed to pay him the remaining $144,000 due under the terms of the Settlement Agreement and the Release. Bier did not sue any entity owned or effectively controlled by McDowell. McDowell appears to have alleged counterclaims for breach of contract and for fraud related to a promissory note and money owed under a lease.

The jury found that McDowell individually agreed to pay Bier, that McDowell failed to comply with his agreement to pay Bier, and that Bier was damaged in the amount of $144,000. The jury also found that Bier did not agree to pay McDowell and that neither party committed fraud. The trial court entered judgment on the jury's verdict, ordering that Bier recover from McDowell damages plus prejudgment interest in the amount of $198,043.40

---

[5] Several parts of the record contradictorily indicate that Bier received the first $20,000 payment on March 1, 2003, instead of March 1, 2004.

4

and attorneys' fees rendered through trial in the amount of $43,545. This appeal followed.

## III. PERSONAL LIABILITY

McDowell identifies the following seven issues in challenging the jury's finding that he agreed individually to pay Bier:

1.  Did Bier sue the proper Defendant; or, is McDowell an improper party Defendant and not liable in the capacity in which he has been sued[?]

2.  Do the Agreements upon which Bier bases his cause of action contain sufficient terms to obligate McDowell individually[?]

3.  Do the Agreements[] impose a duty on McDowell individually to pay Bier[?]

4.  Regardless of the Terms of the Agreement(s) did McDowell, through a course of conduct, obligate himself individually to pay Bier[?]

5.  Did McDowell receive individual benefit from the Agreement(s) thereby imposing on McDowell an individual duty to pay Bier[?]

6.  Did McDowell commit fraud, or did Bier allege or prove a piercing of the corporate veil, alter ego, reformation or clarification of the terms of the Agreement(s) to impose a duty on McDowell individually[?]

7.  Did Bier have sufficient pleadings and proof at trial to establish McDowell's personal liability[?]

Notwithstanding these seven issues, McDowell clarifies that "[t]he actual issue is whether [he] is personally obligated to pay Bier pursuant to the terms of the Agreements." The primary thrusts of his arguments that he is not personally obligated to pay Bier the remaining $144,000 due under the terms of the Release are that (a) he did not sign the Release, (b) none of the previous payments to Bier under the Release came from McDowell personally, and (c) key terms are missing from the Release. According to McDowell, "Bier simply sued the wrong person."

### A. Evidentiary Challenges—Issues One, Two, Three, Five, and Seven

#### 1. Legal and Factual Sufficiency Standards of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to

support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

2. Contract Construction

Our primary concern when construing a written contract is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Id.* We presume that the parties to the contract intend every clause to have some effect. *Heritage Res., Inc. v.*

7

*NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows that the parties used them in a technical or different sense. *Heritage Res.*, 939 S.W.2d at 121. In construing a contract, we may not rewrite it nor add to its language, and we must weigh that parties to a contract

> are considered masters of their own choices. They are entitled to select what terms and provisions to include in a contract before executing it. And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose.

*Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.).

3. The Settlement Agreement and Release Personally Obligate McDowell to Pay Bier

McDowell focuses almost exclusively on the terms of the Release to support his arguments that he has no personal obligation to pay Bier. Bier argues that the Settlement Agreement, which McDowell signed, incorporated the Release and, therefore, that McDowell agreed to pay Bier under the terms of the Settlement Agreement and the Release. While the Settlement Agreement and the Release are indeed separate documents, it is well settled that a written contract may comprise multiple documents and that "in order to ascertain the

8

entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984); *see Fort Worth ISD v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) ("[I]nstruments pertaining to the same transaction may be read together to ascertain the parties' intent, . . . and . . . a court may determine, as a matter of law, that multiple documents comprise a written contract."); *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999) (confirming that the principle of contract interpretation that all writings pertaining to the same transaction will be considered together is simply a device for ascertaining and giving effect to the intention of the parties); *Citizens Nat'l Bank in Abilene v. Tex. & Pac. Ry. Co.*, 136 Tex. 333, 338, 150 S.W.2d 1003, 1006, *cert. denied*, 314 U.S. 656 (1941) (explaining that "each and every part of the contract must be construed and considered with every other part, so that the effect or meaning of one part on any other part may be determined").

Here, the Release was executed contemporaneously with the Settlement Agreement and both pertain to the same transaction because they both concern the release of any and all claims that Bier has or may have against McDowell

9

and any entity controlled by McDowell.[6]  Further, as explained in greater detail below, the Settlement Agreement expressly conditions the validity of the release and indemnification provisions set forth therein on the very existence and execution of the Release, which does not even contain a signature line for McDowell or any person or entity other than Bier.  Therefore, in order to ascertain McDowell's and Bier's intent with regard to McDowell's personal liability to pay Bier money, we will construe the Settlement Agreement and the Release together as one contract instead of looking at only the terms of the Release.  *See Fort Worth ISD*, 22 S.W.3d at 840; *Jim Walter Homes*, 668 S.W.2d at 327.

Section VIII of the Settlement Agreement is entitled "Additional Instruments."  This section provides that the releases and indemnifications set forth in the Settlement Agreement "shall only become effective upon the execution of a separate written agreement *between Richard Bier and McDowell*

---

[6] ... Indeed, McDowell testified as follows:

[Bier's counsel]:  But you clearly contemplated that there would be a separate, second document *that would be part of* - -

[McDowell]:  Yes, sir.

[Bier's counsel]:  - - *this transaction*.

[McDowell]:  Yes, sir.  [Emphasis added.]

10

settling the referenced claim." [Emphasis added.] Section VIII also states, "Absent such separate agreement, any releases between McDowell and Richard Bier shall be deemed null and void and of no force and effect." The Settlement Agreement's releases and indemnifications are therefore void in the absence of a separate agreement "between" Bier and "McDowell." These provisions raise two relevant inquiries: (1) Who or what falls within the meaning of the term "McDowell" as used in the Settlement Agreement? and (2) What, if anything, is the "separate agreement" mentioned in Section VIII of the Settlement Agreement? These inquiries are relevant to McDowell's issues because the person, persons, or entities defined in the Settlement Agreement as "McDowell" expressly agreed that the "separate agreement" articulated in Section VIII be "between" "Bier and McDowell," thus obligating "McDowell" to pay Bier.[7]

In regard to the first inquiry, the Settlement Agreement identifies that in addition to other persons or entities, McDowell, individually; FM Parker Square, through its general partner; and Five Star are collectively referred to throughout the document as "McDowell." Therefore, the term "McDowell" includes, among others, McDowell individually.

---

[7] ... McDowell agreed at trial that the Release "obligated somebody" to pay Bier $234,000, but just not him.

In regard to the second inquiry, it is undisputed that the "separate agreement" mentioned in Section VIII is the Release, which was executed by Bier contemporaneously with the Settlement Agreement and expressly refers to McDowell, individually; FM Parker Square; and Five Star. McDowell even confirmed at trial that the "separate agreement" contemplated in Section VIII is the Release:

> [Bier's counsel]: But you clearly contemplated that there would be a separate, second document that would be part of - -
>
> [McDowell]: Yes, sir.
>
> [Bier's counsel]: - - this transaction.
>
> [McDowell]: Yes, sir.
>
> [Bier's counsel]: *And is it your understanding that Plaintiff's Exhibit No. 2* [the Release] *is that second document?*
>
> [McDowell]: *Yes, sir.*
>
> [Bier's counsel]: And that is the part of this transaction that obligated somebody to pay Richard Bier $234,000. Correct?
>
> [McDowell]: Yes, sir. [Emphasis added.]

Therefore, construing the terms of the Settlement Agreement and the Release together, the parties to the documents intended and agreed that the Release be between Bier and, among other parties, McDowell in his individual capacity. The Settlement Agreement and the Release contain sufficient terms

12

to obligate and impose a duty upon McDowell individually to pay Bier, and McDowell's personal obligation to pay Bier does not fail for lack of mutuality in light of the considerations identified by each party in the Settlement Agreement and the Release; Bier accordingly proved the existence of a valid obligating agreement. Further, the absence of McDowell's signature on the Release does not preclude the jury's finding that McDowell individually agreed to pay Bier because McDowell signed the Settlement Agreement in his individual capacity, and the Settlement Agreement expressly conditions the validity of the release and indemnification provisions set forth therein on the existence and execution of the Release and expressly provides that the "separate agreement" (the Release) is between Bier and "McDowell," which term includes McDowell in his individual capacity. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) ("[A]n unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed . . . plainly refers to another writing.") (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)); *see also Fort Worth ISD*, 22 S.W.3d at 840. Further, the evidence was undisputed that Bier had only been paid $90,000. Accordingly, we hold that the evidence is legally sufficient to support the jury's findings that McDowell individually agreed to

13

pay, but did not pay, Bier pursuant to the terms of the Settlement Agreement and the Release.

McDowell testified repeatedly that he did not intend to personally obligate himself to anything under the Settlement Agreement and the Release; Five Star and FM Parker Square—not McDowell—made the previous three payments to Bier; and the evidence is disputed regarding who or what entity Bier transferred his interest in FM Parker Square to. Also, McDowell impeached Bier with Bier's deposition testimony that the Release does not obligate McDowell individually to pay Bier, but Bier explained in his testimony at trial that the Release is "tied" to the Settlement Agreement. We hold that the evidence supporting the jury's findings is not so weak or so contrary to the overwhelming weight of all the evidence that the jury's findings should be set aside and a new trial ordered. *See Pool*, 715 S.W.2d at 635; *Garza*, 395 S.W.2d at 823. Accordingly, we hold that the evidence is factually sufficient to support the jury's findings that McDowell individually agreed to pay, but did not pay, Bier pursuant to the terms of the Settlement Agreement and the Release. We overrule McDowell's first, second, third, fifth, and seventh issues.

14

B.    Course of Conduct and Fraud—Issues Four and Six

McDowell's issues four and six concern alternative theories of imposing a duty upon him individually to pay Bier.  Having overruled his first, second, third, fifth, and seventh issues challenging the jury's findings that McDowell individually agreed to pay Bier, we need not address whether McDowell obligated himself individually to pay Bier under other theories.  We overrule McDowell's fourth and sixth issues.

C.    Attorneys' Fees

McDowell argues within the context of his other issues that Bier cannot recover attorneys' fees because there is no evidence that Bier presented his demand for attorneys' fees to McDowell as required by civil practice and remedies code section 38.002(2).

Section 38.002(2) requires that a party seeking attorneys' fees "present the claim to the opposing party or to a duly authorized agent of the opposing party."  Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2) (Vernon 2008).  The purpose of presentment is to allow the person against whom the claim is asserted an opportunity to pay a claim within thirty days after notice of the claim without incurring an obligation for attorneys' fees.  *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981); *Chandler v. Mastercraft Dental Corp. of Tex., Inc.*, 739 S.W.2d 460, 470 (Tex. App.—Fort Worth 1987, writ denied).

15

Presentment may be made either before or after filing suit, provided it is made at least thirty days before judgment, and no particular form of presentment is required. *Harrison v. Gemdrill Int'l, Inc.*, 981 S.W.2d 714, 719 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Sterling Const. Co. v. West Tex. Equip. Co.*, 597 S.W.2d 515, 518 (Tex. Civ. App.—Amarillo 1980, no writ).

We initially note that before trial, the parties agreed that neither would present evidence of attorneys' fees during trial but would instead submit the amount of attorneys' fees to the trial court following the trial, which Bier's attorneys did. McDowell's counsel confirmed that the attorneys "were going to just leave the issues with regard to attorney's fees totally out of the trial." McDowell's argument that Bier presented no evidence of presentment conflicts with the agreement that he made with Bier immediately before trial to not present any evidence of attorneys' fees at trial.

Nonetheless, Bier testified about the efforts he made to collect the money he was owed from McDowell. This included multiple conversations inquiring about the money owed, one in which McDowell indicated that he was attempting to refinance a house to get cash and another regarding McDowell selling a house that Bier had built for him.[8] We hold that Bier met his burden

---

[8] ... Though not admitted at trial, the record contains a letter from Bier's attorney to McDowell demanding that McDowell pay Bier the money owed.

16

of presentment under section 38.002(2).  *See Jones*, 614 S.W.2d at 100 (reasoning that presentment is to be liberally construed); *Panizo v. Young Men's Christian Ass'n*, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996, no writ) (same).  We overrule McDowell's presentment argument.

## IV.  CONCLUSION

Having overruled all of McDowell's issues and arguments, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  GARDNER and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  April 8, 2010

17