COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-231-CV

 

 

JOSEPH C. MCDOWELL, JR.                                                  APPELLANT

 

                                                   V.

 

RICHARD C. BIER                                                                   APPELLEE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  INTRODUCTION

Appellant
Joseph C. McDowell, Jr. appeals a judgment entered on the jury=s
verdict in favor of Appellee Richard C. Bier on Bier=s breach
of contract claim.  In seven issues,
McDowell challenges the jury=s
finding that he is personally liable to Bier for money owed to Bier.  We will affirm.








II.  FACTUAL
AND PROCEDURAL BACKGROUND

McDowell
performs commercial real estate development and oversees commercial real estate
companies that he either owns or has an interest in. Bier is a
subcontractor for a commercial construction company.  Between 1986 and February 2003, Bier
performed work or otherwise engaged in business transactions with McDowell or
with entities owned or controlled by McDowell.[2]
McDowell, the entities he owns or controls, or both consequently incurred debts
or obligations to Bier.








In an
effort to Awipe[] the slate clean@ of a
number of issues that had developed over a period of years, on February 7,
2003, Bier, McDowell, entities effectively controlled by McDowell, and several
other entities entered into a ACompromise
Settlement Agreement and Release@ (the ASettlement
Agreement@).  According to the Settlement Agreement, for
various considerations, the parties agreed to a Afull,
final, and complete settlement . . . and release of any and all
claims . . . and causes of action of whatever kind . . .
resulting or arising in any way from business relationships between the Parties
hereto prior to the date of this Agreement.@  McDowell and Bier both signed the Settlement
Agreement in their individual capacities, and McDowell signed the Settlement
Agreement as a member of CDR Resources, L.L.C.; on behalf of Five Star as its
President; on behalf of FM Parker Square by its general partner, Five Star; and
in his capacity as the controlling interest owner of any other entity that
might have a claim against or obligation to AHeatherwood
Group.@[3]

Also on
February 7, 2003, Bier executed a document entitled AAgreement
of Sale and General Release@ (the ARelease@).[4]  According to the Release, in exchange for
$234,000Cpayable
in the amount of $50,000 on February 10, 2003, and the remaining $184,000 on March
10, 2003CBier
agreed to transfer his partnership interest in FM Parker Square and to release
McDowell and any entity controlled by McDowell Afrom any
and all . . . actions and causes of action[] . . . relating
. . . to@ Bier=s
investment in FM Parker Square and his employment or independent contractor
relationship with McDowell and any entity controlled by McDowell.  Only Bier signed the Release.








Bier
received his first payment under the terms of the Release shortly after
February 10, 2003:  a check dated
February 11, 2003, in the amount of $50,000 that was drawn on FM Parker Square.  Bier did not receive the remaining $184,000
on March 10, 2003, as contemplated by the terms of the Release.  Instead, he received a wire-transfer payment
in the amount of $20,000 from Five Star on March 1, 2004, and a second
wire-transfer payment in the amount of $20,000 from Five Star on May 21, 2004.[5]  No further payments were made to Bier.

In April
2006, Bier sued McDowell personally for breach of contract and for fraud.  Bier alleged in part that McDowell had failed
to pay him the remaining $144,000 due under the terms of the Settlement
Agreement and the Release.  Bier did not
sue any entity owned or effectively controlled by McDowell.  McDowell appears to have alleged
counterclaims for breach of contract and for fraud related to a promissory note
and money owed under a lease.








The jury
found that McDowell individually agreed to pay Bier, that McDowell failed to
comply with his agreement to pay Bier, and that Bier was damaged in the amount
of $144,000.  The jury also found that
Bier did not agree to pay McDowell and that neither party committed fraud.  The trial court entered judgment on the jury=s
verdict, ordering that Bier recover from McDowell damages plus prejudgment
interest in the amount of $198,043.40 and attorneys= fees
rendered through trial in the amount of $43,545.  This appeal followed.

                                      III.  PERSONAL LIABILITY

McDowell
identifies the following seven issues in challenging the jury=s
finding that he agreed individually to pay Bier:

1.     Did Bier sue the proper Defendant; or, is McDowell an improper
party Defendant and not liable in the capacity in which he has been sued[?]

 

2.     Do the Agreements upon which Bier bases his cause of action
contain sufficient terms to obligate McDowell individually[?]

 

3.     Do the Agreements[] impose a duty on McDowell individually to
pay Bier[?]

 

4.     Regardless of the Terms of the Agreement(s) did McDowell,
through a course of conduct, obligate himself individually to pay Bier[?]

 

5.     Did McDowell receive individual benefit from the Agreement(s)
thereby imposing on McDowell an individual duty to pay Bier[?]

 

6.     Did McDowell commit fraud, or did Bier allege or prove a
piercing of the corporate veil, alter ego, reformation or clarification of the
terms of the Agreement(s) to impose a duty on McDowell individually[?]

 

7.     Did Bier have sufficient pleadings and proof at trial to
establish McDowell=s personal liability[?]

 








Notwithstanding these seven
issues, McDowell clarifies that A[t]he
actual issue is whether [he] is personally obligated to pay Bier pursuant to
the terms of the Agreements.@  The primary thrusts of his arguments that he
is not personally obligated to pay Bier the remaining $144,000 due under the
terms of the Release are that (a) he did not sign the Release,
(b) none of the previous payments to Bier under the Release came from
McDowell personally, and (c) key terms are missing from the Release.  According to McDowell, ABier
simply sued the wrong person.@

A.     Evidentiary ChallengesCIssues One, Two, Three, Five, and Seven

 

1.     Legal and Factual Sufficiency Standards of
Review








We may
sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no
more than a mere scintilla; or (4) the evidence establishes conclusively
the opposite of a vital fact.  Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert.
denied, 526 U.S. 1040 (1999); Robert W. Calvert, "No Evidence"
and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361,
362B63
(1960).  In determining whether there is
legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
evidence supporting the finding is so weak, or so contrary to the overwhelming
weight of all the evidence, that the answer should be set aside and a new trial
ordered.  Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986) (op. on reh=g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

2.     Contract Construction








Our
primary concern when construing a written contract is to ascertain the true
intentions of the parties as expressed in the instrument.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  We examine and consider the
entire writing in an effort to harmonize and give effect to all provisions of
the contract so that none will be rendered meaningless.  Id. 
We presume that the parties to the contract intend every clause to have
some effect.  Heritage Res., Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex. 1996); XCO Prod. Co. v. Jamison,
194 S.W.3d 622, 627 (Tex. App.CHouston
[14th Dist.] 2006, pet. denied). We give terms their plain, ordinary, and
generally accepted meaning unless the contract shows that the parties used them
in a technical or different sense. Heritage Res., 939 S.W.2d at
121.  In construing a contract, we may
not rewrite it nor add to its language, and we must weigh that parties to a
contract

are considered masters of their own choices.  They are entitled to select what terms and
provisions to include in a contract before executing it.  And, in so choosing, each is entitled to rely
upon the words selected to demarcate their respective obligations and rights.
In short, the parties strike the deal they choose to strike and, thus,
voluntarily bind themselves in the manner they choose.

 

Cross Timbers Oil Co. v. Exxon
Corp., 22 S.W.3d 24, 26 (Tex. App.CAmarillo
2000, no pet.).

3.     The Settlement Agreement and Release Personally Obligate
McDowell to Pay Bier

 








McDowell
focuses almost exclusively on the terms of the Release to support his arguments
that he has no personal obligation to pay Bier. 
Bier argues that the Settlement Agreement, which McDowell signed,
incorporated the Release and, therefore, that McDowell agreed to pay Bier under
the terms of the Settlement Agreement and the Release.  While the Settlement Agreement and the
Release are indeed separate documents, it is well settled that a written
contract may comprise multiple documents and that Ain order
to ascertain the entire agreement between contracting parties, separate
documents executed at the same time, for the same purpose, and in the course of
the same transaction are to be construed together.@  Jim Walter Homes, Inc. v. Schuenemann,
668 S.W.2d 324, 327 (Tex. 1984); see Fort Worth ISD v. City of Fort Worth,
22 S.W.3d 831, 840 (Tex. 2000) (A[I]nstruments
pertaining to the same transaction may be read together to ascertain the
parties= intent,
. . . and . . . a court may determine, as a matter of law,
that multiple documents comprise a written contract.@); DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999) (confirming
that the principle of contract interpretation that all writings pertaining to
the same transaction will be considered together is simply a device for
ascertaining and giving effect to the intention of the parties); Citizens
Nat=l Bank in Abilene v. Tex. &
Pac. Ry. Co., 136 Tex. 333, 338, 150 S.W.2d 1003, 1006, cert.
denied, 314 U.S. 656 (1941) (explaining that Aeach and
every part of the contract must be construed and considered with every other
part, so that the effect or meaning of one part on any other part may be
determined@).








Here,
the Release was executed contemporaneously with the Settlement Agreement and
both pertain to the same transaction because they both concern the release of
any and all claims that Bier has or may have against McDowell and any entity
controlled by McDowell.[6]  Further, as explained in greater detail
below, the Settlement Agreement expressly conditions the validity of the
release and indemnification provisions set forth therein on the very existence
and execution of the Release, which does not even contain a signature line for
McDowell or any person or entity other than Bier.  Therefore, in order to ascertain McDowell=s and
Bier=s intent
with regard to McDowell=s personal liability to pay Bier
money, we will construe the Settlement Agreement and the Release together as
one contract instead of looking at only the terms of the Release.  See Fort Worth ISD, 22 S.W.3d at 840; Jim
Walter Homes, 668 S.W.2d at 327.








Section
VIII of the Settlement Agreement is entitled AAdditional
Instruments.@ 
This section provides that the releases and indemnifications set forth
in the Settlement Agreement Ashall
only become effective upon the execution of a separate written agreement between
Richard Bier and McDowell settling the referenced claim.@
[Emphasis added.]  Section VIII also
states, AAbsent
such separate agreement, any releases between McDowell and Richard Bier shall
be deemed null and void and of no force and effect.@  The Settlement Agreement=s
releases and indemnifications are therefore void in the absence of a separate
agreement Abetween@ Bier
and AMcDowell.@  These provisions raise two relevant
inquiries:  (1) Who or what falls within the meaning of the term
AMcDowell@ as used
in the Settlement Agreement? and (2) What, if anything, is the Aseparate
agreement@ mentioned in Section VIII of
the Settlement Agreement?  These
inquiries are relevant to McDowell=s issues
because the person, persons, or entities defined in the Settlement Agreement as
AMcDowell@
expressly agreed that the Aseparate
agreement@ articulated in Section VIII be Abetween@ ABier and
McDowell,@ thus obligating AMcDowell@ to pay
Bier.[7]

In
regard to the first inquiry, the Settlement Agreement identifies that in addition
to other persons or entities, McDowell, individually; FM Parker Square, through
its general partner; and Five Star are collectively referred to throughout the
document as AMcDowell.@  Therefore, the term AMcDowell@
includes, among others, McDowell individually.








In
regard to the second inquiry, it is undisputed that the Aseparate
agreement@ mentioned in Section VIII is
the Release, which was executed by Bier contemporaneously with the Settlement
Agreement and expressly refers to McDowell, individually; FM Parker Square; and
Five Star.  McDowell even confirmed at
trial that the Aseparate agreement@
contemplated in Section VIII is the Release:

[Bier=s counsel]:  But you clearly contemplated that there would
be a separate, second document that would be part of - -

 

[McDowell]:  Yes, sir.

[Bier=s
counsel]:  - - this transaction.

[McDowell]:  Yes, sir.

[Bier=s counsel]:  And is it your understanding that
Plaintiff=s Exhibit No. 2 [the Release] is that
second document?

 

[McDowell]:  Yes, sir.

[Bier=s counsel]:  And that is the part of this transaction that
obligated somebody to pay Richard Bier $234,000.  Correct?

 

[McDowell]:  Yes, sir. 
[Emphasis added.]













Therefore,
construing the terms of the Settlement Agreement and the Release together, the
parties to the documents intended and agreed that the Release be between Bier
and, among other parties, McDowell in his individual capacity.  The Settlement Agreement and the Release
contain sufficient terms to obligate and impose a duty upon McDowell
individually to pay Bier, and McDowell=s
personal obligation to pay Bier does not fail for lack of mutuality in light of
the considerations identified by each party in the Settlement Agreement and the
Release; Bier accordingly proved the existence of a valid obligating
agreement.  Further, the absence of
McDowell=s
signature on the Release does not preclude the jury=s
finding that McDowell individually agreed to pay Bier because McDowell signed
the Settlement Agreement in his individual capacity, and the Settlement
Agreement expressly conditions the validity of the release and indemnification
provisions set forth therein on the existence and execution of the Release and
expressly provides that the Aseparate
agreement@ (the Release) is between Bier
and AMcDowell,@ which
term includes McDowell in his individual capacity.  See In re Prudential Ins. Co. of Am.,
148 S.W.3d 124, 135 (Tex. 2004) (A[A]n
unsigned paper may be incorporated by reference in the paper signed by the
person sought to be charged.  The
language used is not important provided the document signed . . .
plainly refers to another writing.@)
(quoting Owen v. Hendricks, 433 S.W.2d 164, 166 (Tex. 1968)); see
also Fort Worth ISD, 22 S.W.3d at 840. 
Further, the evidence was undisputed that Bier had only been paid
$90,000.  Accordingly, we hold that the
evidence is legally sufficient to support the jury=s
findings that McDowell individually agreed to pay, but did not pay, Bier
pursuant to the terms of the Settlement Agreement and the Release.

McDowell
testified repeatedly that he did not intend to personally obligate himself to
anything under the Settlement Agreement and the Release; Five Star and FM
Parker SquareCnot McDowellCmade the
previous three payments to Bier; and the evidence is disputed regarding who or
what entity Bier transferred his interest in FM Parker Square to.  Also, McDowell impeached Bier with Bier=s
deposition testimony that the Release does not obligate McDowell individually
to pay Bier, but Bier explained in his testimony at trial that the Release is Atied@ to the
Settlement Agreement.  We hold that the
evidence supporting the jury=s
findings is not so weak or so contrary to the overwhelming weight of all the
evidence that the jury=s findings should be set aside
and a new trial ordered. See Pool, 715 S.W.2d at 635; Garza, 395
S.W.2d at 823.  Accordingly, we hold that
the evidence is factually sufficient to support the jury=s
findings that McDowell individually agreed to pay, but did not pay, Bier
pursuant to the terms of the Settlement Agreement and the Release.  We overrule McDowell=s first,
second, third, fifth, and seventh issues.








B.     Course of Conduct and FraudCIssues
Four and Six

McDowell=s issues
four and six concern alternative theories of imposing a duty upon him
individually to pay Bier.  Having
overruled his first, second, third, fifth, and seventh issues challenging the
jury=s
findings that McDowell individually agreed to pay Bier, we need not address
whether McDowell obligated himself individually to pay Bier under other
theories.  We overrule McDowell=s fourth
and sixth issues.

C.     Attorneys= Fees

McDowell
argues within the context of his other issues that Bier cannot recover
attorneys= fees because there is no
evidence that Bier presented his demand for attorneys= fees to
McDowell as required by civil practice and remedies code section 38.002(2).








Section
38.002(2) requires that a party seeking attorneys= fees Apresent
the claim to the opposing party or to a duly authorized agent of the opposing
party.@  Tex. Civ. Prac. & Rem. Code Ann. ' 38.002(2)
(Vernon 2008).  The purpose of presentment
is to allow the person against whom the claim is asserted an opportunity to pay
a claim within thirty days after notice of the claim without incurring an
obligation for attorneys= fees.  Jones v. Kelley, 614 S.W.2d 95, 100
(Tex. 1981); Chandler v. Mastercraft Dental Corp. of Tex., Inc., 739
S.W.2d 460, 470 (Tex. App.CFort
Worth 1987, writ denied). Presentment may be made either before or after filing
suit, provided it is made at least thirty days before judgment, and no
particular form of presentment is required. 
Harrison v. Gemdrill Int=l, Inc., 981
S.W.2d 714, 719 (Tex. App.CHouston
[1st Dist.] 1998, pet. denied); Sterling Const. Co. v. West Tex. Equip. Co.,
597 S.W.2d 515, 518 (Tex. Civ. App.CAmarillo
1980, no writ).

We
initially note that before trial, the parties agreed that neither would present
evidence of attorneys= fees during trial but would
instead submit the amount of attorneys= fees to
the trial court following the trial, which Bier=s
attorneys did.  McDowell=s
counsel confirmed that the attorneys Awere
going to just leave the issues with regard to attorney=s fees
totally out of the trial.@ McDowell=s
argument that Bier presented no evidence of presentment conflicts with the
agreement that he made with Bier immediately before trial to not present any
evidence of attorneys= fees at trial.








Nonetheless,
Bier testified about the efforts he made to collect the money he was owed from
McDowell.  This included multiple
conversations inquiring about the money owed, one in which McDowell indicated
that he was attempting to refinance a house to get cash and another regarding
McDowell selling a house that Bier had built for him.[8]  We hold that Bier met his burden of
presentment under section 38.002(2).  See
Jones, 614 S.W.2d at 100 (reasoning that presentment is to be liberally construed);
Panizo v. Young Men=s
Christian Ass=n, 938
S.W.2d 163, 168 (Tex. App.CHouston
[1st Dist.] 1996, no writ) (same).  We
overrule McDowell=s presentment argument.

                                          IV.  CONCLUSION

Having
overruled all of McDowell=s issues and arguments, we
affirm the trial court=s judgment.

 

 

BILL MEIER

JUSTICE

 

PANEL:  GARDNER and MEIER, JJ.;
and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  April 8, 2010











[1]See Tex. R. App. P. 47.4.





[2]McDowell is President of
Five Star Development Co., Inc.  Five
Star is the general partner of FM Parker Square, Ltd.





[3]AHeatherwood Homes, Ltd.,@ through its general
partner CDR Resources, was a party to the Settlement Agreement.





[4]Bier testified that he
executed the Release the same day that he executed the Settlement Agreement.





[5]Several parts of the
record contradictorily indicate that Bier received the first $20,000 payment on
March 1, 2003, instead of March 1, 2004.





[6]Indeed, McDowell
testified as follows:

 

[Bier=s counsel]:  But you clearly contemplated that there would
be a separate, second document that would be part of - -

 

[McDowell]:  Yes, sir.

 

[Bier=s counsel]:  - - this transaction.

 

[McDowell]:  Yes, sir. 
[Emphasis added.]





[7]McDowell agreed at trial
that the Release Aobligated somebody@ to pay Bier $234,000,
but just not him.





[8]Though not admitted at
trial, the record contains a letter from Bier=s attorney to McDowell
demanding that McDowell pay Bier the money owed.